COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia


RIVERSIDE REGIONAL JAIL AUTHORITY AND
 VML INSURANCE PROGRAMS
                                                                    OPINION BY
v.       Record No. 0153-17-2                        JUDGE ROBERT J. HUMPHREYS
                                                                    JULY 25, 2017
MORRISA DUGGER


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           Ralph L. Whitt, Jr. (Megan Kerwin Clark; Whitt & Del Bueno, PC,
           on brief), for appellants.

           No brief or argument for appellee.


           Riverside Regional Jail Authority and VML Insurance Programs (collectively,

"employer") appeal the January 3, 2017 decision of the Workers' Compensation Commission

(the "commission") affirming the deputy commissioner's determination that Morrisa Dugger

("Dugger") "sustained a compensable injury by accident arising out of and in the course of her

employment . . . and awarding medical benefits." Employer contends the commission erred

because there was no credible evidence to support a finding that Dugger suffered an "injury by

accident."

                                    I.  BACKGROUND

           Dugger, a correctional officer with employer, filed a Workers' Compensation claim on

March 1, 2016, alleging she sustained a work-related injury to her right knee during the course of

her employment with employer. At the evidentiary hearing before a deputy commissioner on

June 22, 2016, Dugger testified that on September 22, 2015, Dugger was in training on

"defensive tactics" for employer. The physical training lasted from 8:00 a.m. to 12:00 noon,

with an in-class portion and test to follow in the afternoon.  During the physical training, Dugger testified, "I was tossed around a bit, which is usual because we, we show the [defensive] moves on each other in partners, we rotate partners every move that we do.  And then I was tossed around and taken down, simulated fights, and that was it."  Dugger first noticed pain in her right knee as she was walking away from the physical portion of the class, and noticed swelling in her knee later that day at Patient First.  The pain in her right knee intensified when she went up the steps that day.  Dugger never had problems with that knee in the past.

Dugger reported the pain to her instructor, and was eventually told by one of her supervisors that she should go to Patient First.  Dugger arrived at Patient First at "almost 3:00" in the afternoon on the day of the injury.  She was prescribed pain medication for the swelling in her knee and had "a few follow up visits" at Patient First.  The medical records entered into evidence indicated that Dugger had sustained a right knee sprain during her defensive training.  The physician also recommended that Dugger be restricted to "light duty work restrictions: desk job mainly" until September 26, 2015.  The medical record for Dugger's follow-up appointment the next day noted that Dugger should avoid bearing weight on that knee and that an orthopedic referral might be necessary.

Dugger had another follow-up appointment with Patient First on October 9, 2015; the medical record for that date states, "Right knee pain has almost completely resolved, but [Dugger] is having continued cracking in the knee and residual swelling."  The treating physician on that day noted that Dugger "[m]ay have a torn meniscus.  Will [follow up] in [one] month.  Will refer to orthopedics if still symptomatic."  At the follow-up appointment on November 13, 2015, the physician commented, "Clinically has an asymptomatic torn meniscus.  Will [follow up] with the orthopedist for further evaluation."

The deputy commissioner issued his opinion on June 27, 2016, and held:

> Though the claimant did not articulate a specific onset of pain during her morning physical tactics training, she did reference "take downs" and being tossed around during that period, and to her doctor thereafter spoke of feeling "discomfort in the right knee" and the next day of "instant right knee pain" during training.
>
> The [c]ommission finds the claimant a bit shy in her testimony, but nevertheless descriptive of an injury by accident, a knee sprain, at a reasonably definite period of time. Therefore, the [c]ommission finds the claimant has described an injury by accident which arose out of and in the course of employment on the morning of September 22, 2015.

The deputy commissioner then awarded Dugger medical benefits for treatment of the sprained knee, and employer demanded a full commission review of the decision.

The commission issued its review opinion on January 3, 2017, affirming the deputy commissioner's decision and holding that Dugger was "in the course of her employment during the defensive training" because such training "constituted an actual risk of employment." The contested holding to which employer assigns error, however, is that Dugger proved an "injury by accident." In its opinion, the commission focused on the holding of the Supreme Court in Kohn v. Marquis, 288 Va. 142, 149, 762 S.E.2d 755, 758 (2014), and held that Dugger "established an identifiable accident which caused her injury," because her knee strain was a result of the defensive training, a risk that Dugger took on solely in the context of her work with employer.

In conclusion, the commission found:

> The claimant here was engaged in a variety of training exercises and defensive maneuvers over a discrete period of time. The Patient First physicians, selected by the employer, indicated the claimant's knee sprain was caused by her work. The claimant felt the pain as she walked away from the physical training part of the class and reported it very soon afterwards. We find her testimony was credible and supports the finding she sustained an injury caused by a particular piece of work occurring at a reasonably definite time. The claimant proved an injury by accident and was entitled to a medical award.

- 3 -

Employer now appeals the commission's decision, arguing that Dugger's evidence did not prove "injury by accident" because (1) "she was engaged in repetitive movements," (2) "she did not feel any pain or symptoms in her knee until after she completed the training" and (3) "she could not point to any identifiable incident that caused her injury."

## II.  ANALYSIS

### A.  Standard of Review

"On appeal, this Court views the evidence in the light most favorable to the prevailing party below."  Van Buren v. Augusta Cty., 66 Va. App. 441, 444, 787 S.E.2d 532, 533 (2016) (quoting Town & Country Hosp., LP v. Davis, 64 Va. App. 658, 660, 770 S.E.2d 790, 791 (2015)).  Here, Dugger was the prevailing party.  "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339, 641 S.E.2d 129, 132 (2007).  The commission's determination of whether a claimant suffered

> an "injury by accident" presents a mixed question of law and fact, because it involves both factual findings and the application of law to those facts.  The Commission's factual findings bind us as long as credible evidence supports them.  Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477, 624 S.E.2d 681, 683 (2006).  But "whether those facts prove the claimant suffered an 'injury by accident' is a question of law."  Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168, 543 S.E.2d 619, 621 (2001).

Van Buren, 66 Va. App. at 446, 787 S.E.2d at 534.

### B.  Legal Precedent for "Injury by Accident"

Code § 65.2-101 defines an injury compensable by the Workers' Compensation Act (the "Act") to be "only injury by accident arising out of and in the course of the employment" of the claimant.  To prove an "injury by accident," a claimant must prove:  "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change."

- 4 -

Hoffman v. Carter, 50 Va. App. 199, 212, 648 S.E.2d 318, 325 (2007). Further, our Supreme Court has held that "injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not 'injuries by accident.'" Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989).

In Morris, which decided three separate but similar claims, the Supreme Court found that none of the claims merited compensation under the Act. Id. The first claimant was involved in lifting nearly 100 cartons, weighing fifty pounds each, over a forty-five-minute period. Id. at 581, 385 S.E.2d at 859. After loading the cartons, he suffered a heart attack; but he had "suffered from heart disease for some time." Id. The second claimant was involved in unloading multiple large, steel doors over a 1.5-hour period. Id. at 582, 385 S.E.2d at 860. It wasn't until the next day when he could no longer work, went to the hospital, and discovered he had a ruptured disk in his back. Id. The third claimant was injured while installing ceiling panels weighing thirty to thirty-five pounds during a 2.5-hour period. Id. at 583, 385 S.E.2d at 861. This claimant also suffered a heart attack, but was "[fifty-eight] years old, and had smoked two packs of cigarettes a day since age [twenty]." Id. The Supreme Court determined that none of the claims constituted an injury by accident because none of the claimants showed that "the *cause* of his injury was an *identifiable incident or sudden precipitating event* and that it resulted in an *obvious* [or] *sudden mechanical or structural change in the body.*" Id. at 589, 385 S.E.2d at 865 (emphasis in original) (quoting The Lane Co., Inc. v. Saunders, 229 Va. 196, 199, 326 S.E.2d 702, 703-04 (1985)).

In Hoffman, this Court held that a claimant suffered an "injury by accident" when he breathed in thick, dusty air for three-to-four hours while demolishing a house. 50 Va. App. at 206, 648 S.E.2d at 322. The worker was not wearing a respiratory mask, even though they were available, and he began coughing up phlegm near the end of his shift. Id. "He continued

coughing and left work early the next day, and went to a physician at the first available opportunity." Id. at 213-14, 648 S.E.2d at 325. As a result, this Court held that "the evidence [was] sufficient to support a finding that Carter's exposure to plaster dust was 'bounded by rigid temporal precision,' and thus constituted 'an identifiable incident,'" since the exposure to the dust was confined to the specific three-to-four hours. Id. at 214, 648 S.E.2d at 325. The Court also noted that Hoffman was similar to another case where the Supreme Court found that an injury arising from four-hour exposure to a walk-in freezer did not constitute "repetitive trauma" or a "cumulative event" because the "claimant's condition was not an 'injury of gradual growth . . . caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work,'" but rather was related to an "identifiable incident" that occurred during the four-hour period. Id. at 213, 648 S.E.2d at 325 (quoting Southern Express v. Green, 257 Va. 181, 189, 509 S.E.2d 836, 841 (1999)).

In Kohn, the Supreme Court determined that the death of a police recruit who died during police training was considered an accident covered under the Act. 288 Va. at 149, 762 S.E.2d at 758. In Kohn, the recruit, Kohn, was "violently struck in the head during training" on multiple occasions between September and December of 2010. Id. at 145, 762 S.E.2d at 756. However, on December 9, 2010, Kohn "suffered several blows to his head while engaged in a defensive training exercise" and "began demonstrating serious neurological deficits during the training exercises," collapsed, and was taken to the hospital. Id. at 145-46, 762 S.E.2d at 756. Kohn later died due to head trauma. Id. at 146, 762 S.E.2d at 756. Attempting to argue that Kohn's death did not fall under the Act, his estate administrator argued that his injuries "resulted from a series of head traumas over a period of time, rather than from a single identifiable event." Id. at 148, 762 S.E.2d at 757. The Supreme Court rejected that argument, holding that the "case significantly differs from the gradually incurred injury and repetitive trauma cases . . . in that

Kohn suffered an obvious mechanical or structural change in his body while engaged in a work activity which exposed him to an employment-related hazard that injured him and contributed to his death." Id. at 149, 762 S.E.2d at 758. The Court further stated that "if the injury or death results from, or is hastened by, conditions of employment exposing the employee to hazards to a degree beyond that of the public at large, the injury or death is construed to be accidental within the meaning of the statute." Id. (quoting Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 216, 28 S.E.2d 725, 727 (1944)).

Finally, in Van Buren, this Court held that a firefighter's injury was compensable as an injury by accident. 66 Va. App. at 456, 787 S.E.2d at 539. In that case, the firefighter, Van Buren, helped move a 400-pound man with a broken leg from the man's shower out to an ambulance over a forty-five-minute period. Id. at 444-45, 787 S.E.2d at 533. Van Buren did not notice the injury until after everything was over, due to an adrenaline rush. Id. at 445, 787 S.E.2d at 534. It was not until four days after the rescue when Van Buren reported his pain, and eventually had material from a herniated disc removed from his back. Id. During each of his doctor's visits, Van Buren "described being hurt while assisting the man." Id. We distinguished Van Buren from Morris, finding that Van Buren "was not engaged in repetitive activity" because he was "engaged in a variety of actions that involved lifting, holding, twisting, pulling, pushing, grabbing, and bending." Id. at 452, 787 S.E.2d at 537. We further held that Van Buren's actions were not cumulative because the forty-five minutes it took to move the man "provided the necessary rigidity of temporal precision to constitute one 'event.'" Id. For those reasons, we concluded that the "injury occurred at a reasonably definite time." Id. at 453, 787 S.E.2d at 537. We summarized our holding as follows:

> We find the entire rescue undertaken by Van Buren was one "piece of work," and the entire forty-five-minute period was one event, not numerous discrete events. We find that this event was an "identifiable incident" and that Van Buren's disc herniation

was a "sudden mechanical or structural change in the body." Hoffman, 50 Va. App. at 212, 648 S.E.2d at 325 (quoting [Chesterfield Cty. v.] Dunn, 9 Va. App. [475,] 476, 389 S.E.2d [180,] 181 [(1990)]). Finally, we find "a causal connection between the incident and the bodily change." Id. We agree with the deputy commissioner that, "to require [Van Buren] to pinpoint the exact moment of the onset of pain during an adrenaline[-]fueled rescue attempt would yield a ridiculous and unjust result."

Id. at 455-56, 787 S.E.2d at 539.

## C. Application

Employer contends that the commission erred in finding that Dugger's injury was compensable because there was no credible evidence that her injury was the result of an identifiable accident occurring at a reasonably definite time. We disagree.

### i. Repetitive Movements

Employer first argues that Dugger's injury was a result of repetitive movements, similar to those in Morris, and thus it does not constitute an injury by accident. Although the record does not establish the specific movements Dugger made during training, Dugger did testify that she took part in "simulated fights," which, when viewed in a light most favorable to Dugger as the prevailing party, logically involved a variety of movements. Indeed, the commission made the factual finding that Dugger was involved in "a variety of training exercises" when her injury occurred.

This case is controlled by the holding in Kohn rather than that in Morris. Just as Kohn's injury was distinguished from repetitive trauma cases because he "suffered an obvious mechanical or structural change in his body while engaged in a work activity," Kohn, 288 Va. at 149, 762 S.E.2d at 758, Dugger's torn meniscus was a "structural change" to her body that occurred while she was engaged in her defensive training class, which was clearly work activity. Dugger was required to participate in "simulated fights" as defensive training for part of her

- 8 -

employment; such simulated fights are "hazards . . . beyond that [suffered by] the public at large." Id. Such an injury is not inherently repetitive any more than would be the actions of a person defending himself in a fight. Additionally, defensive training exercises are more similar to those in Van Buren, where Van Buren was "lifting, holding, twisting, pulling, pushing, grabbing, and bending." 66 Va. App. at 452, 787 S.E.2d at 537. Here, Dugger testified that she was "tossed a bit" and "taken down"—movements which logically require pushing, grabbing, bending, and similar motions. For this reason, when viewed in the light most favorable to Dugger, we hold that Dugger's movements during defensive training were not repetitive in nature.

ii. Temporal Precision

Employer also argues that the four-hour training period in which Dugger had her training exercises was too long to constitute an identifiable incident. Specifically, employer argues the training was not "bounded with rigid temporal precision" as required in Morris. 238 Va. at 589, 385 S.E.2d at 864. However, we find that the facts of this case are again more similar to those in Van Buren and Kohn. Both Kohn and Dugger showed signs of injury immediately after their training; although Kohn collapsed from his final injury, Dugger noticed pain in her knee immediately after and as she was walking from the physical training portion to the in-class portion of the one-day training. Because Dugger did not walk into the physical training with a knee injury, it is clear that Dugger's injury occurred during the four-hour defensive training class—and thus, her injury is sufficiently "bounded by rigid temporal precision." Morris, 238 Va. at 589, 385 S.E.2d at 864. As in Van Buren, where the forty-five-minute time period was held to be one identifiable incident because there was a temporal link between the incident and the injury, Dugger's injury was likewise linked precisely to her defensive training, since she felt knee pain as she walked away from class. Further, employer's argument goes directly against

this Court's holding in Hoffman, where we held that a three-to-four-hour period constituted an "identifiable incident." 50 Va. App. at 214, 648 S.E.2d at 325. Thus, we hold that Dugger's four-hour defensive training was sufficiently "bound with rigid temporal precision" and she did not need to point to one exact instant when the injury occurred.

Employer argues that Van Buren created a "first responder exception," to the "rigid temporal precision" requirement of Morris, and that Dugger cannot claim the exception because she was not under the influence of an adrenaline rush. Employer cites to an unpublished case, Kim v. Roto Rooter Servs. Co., No. 1053-16-4, 2017 Va. App. LEXIS 61 (Va. Ct. App. Mar. 7, 2017), in support of that contention. Kim states that "Van Buren carves out a so-called first responder exception to the rule" that a claimant must show a precise and identifiable incident during which the injury occurred. Id. at *9. However, we disagree with that dicta, which is based on an incorrect assumption that the "[m]ost important[]" aspect of our holding in Van Buren was that Van Buren could not pinpoint exact time of his injury due to an adrenaline rush.[1] Id. To the contrary, this Court's reference to Van Buren's adrenaline rush was not the controlling factor, and was secondary to the findings that: (1) the forty-five-minute rescue "was an 'identifiable incident' and that Van Buren's disc herniation was a 'sudden mechanical or structural change in the body;'" (2) there was a causal connection between the rescue and the injury; (3) the injury was sufficiently bound with temporal precision; and (4) his movements

---

[1] Regarding our holding in Van Buren, Kim states:

> Most importantly, though, this Court, in finding that the claimant in Van Buren had suffered an "injury by accident" agreed with the deputy commissioner in that "to require [claimant] to pinpoint the exact moment of the onset of pain during an adrenaline[-]fueled rescue attempt would yield a ridiculous and unjust result." Moreover, Van Buren carves out a so-called first responder exception to the rule. Thus, it is inapplicable to the present case.

Id. at *9-*10.

during the rescue were not repetitive in nature.  See <u>Van Buren</u>, 66 Va. App. at 455-56, 787 S.E.2d at 539.  Thus, we expressly hold that <u>Van Buren</u> did not create a "first responder exception," but rather clarified that, under some circumstances, such as those present in <u>Van Buren</u>, <u>Kohn</u>, and in this case, a claimant need not be able to pinpoint the exact moment of injury in order for it to be compensable as an "injury by accident" under the Act.

### III.  CONCLUSION

For the aforementioned reasons, we affirm the commission's decision and hold that it did not err in finding Dugger's knee injury to be compensable under the Act.

<u>Affirmed.</u>