COURT OF APPEALS OF VIRGINIA

Present:  Judges Russell, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

DEPARTMENT OF MOTOR VEHICLES/
 COMMONWEALTH OF VIRGINIA
                                                        MEMORANDUM OPINION[*] BY
v.      Record No. 1878-18-2                      JUDGE JEAN HARRISON CLEMENTS
                                                            APRIL 30, 2019
JOHN H. BANDY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Adam L. Katz, Assistant Attorney General (Mark R. Herring,
              Attorney General; Samuel T. Towell, Deputy Attorney General; Tara
              Lynn R. Zurawski, Section Chief, on briefs), for appellant.

              Horace F. Hunter (Hunter & Everage, on brief), for appellee.


        John H. Bandy (claimant) fractured his left wrist during a training session connected to

his employment as a law enforcement agent with the Department of Motor Vehicles (DMV).

DMV appeals the decision of the Virginia Workers' Compensation Commission (Commission)

awarding medical benefits to claimant.[1]  DMV argues that the Commission erred in making

"irreconcilable" factual findings that claimant's injury occurred during both the entire one-day,

eight-hour training session and the four-hour afternoon punching session.  We affirm the

Commission's decision.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commission denied claimant's request for temporary total disability benefits, and
that ruling was not appealed.

BACKGROUND

On appeal, "[t]his Court must view the evidence in the light most favorable to the prevailing party before the commission." Samartino v. Fairfax Cty. Fire & Rescue, 64 Va. App. 499, 502-03 (2015). So viewed, the evidence established that claimant was assigned to participate in a five-day defensive tactics course beginning August 14, 2017. Training took place from 8:00 a.m. to 5:00 p.m. each day, with a one-hour lunch break between the morning and afternoon sessions.

On August 18, 2017, claimant performed several maneuvers in the morning session that involved twisting his hand and wrist backwards and forcibly bending his wrist forward. He also threw different types of punches at another trainee who blocked the punches with his arms. During the training exercises, the participants switched roles between officer and suspect. After lunch, claimant participated in drills in which he punched a hard rubber mannequin for two to three minutes at a time. The final drill of the day required claimant to hit four different mannequins in succession multiple times. Claimant described the exercise as "intense" and said that he hit the mannequins hard enough to make them "jump[]." Claimant estimated that he threw a total of 125-200 punches of various types with his left hand.

Claimant went home after the training ended at 5:00 p.m. Between 6:00 and 6:30 p.m., his watch began to feel tight on his left wrist. He thought he probably had strained his wrist, as it had not been swollen earlier in the day. Claimant put an ice pack on his wrist, which slightly alleviated his discomfort. When he awoke the next morning, his wrist had "blown up like a balloon."

Claimant went to a local urgent care center for treatment on August 19, 2017. He reported to a nurse practitioner that he had injured his left wrist while "hitting a mannequin" during a police training session. An x-ray showed a fracture to his left wrist. On August 21,

2017, an orthopedic hand surgeon evaluated claimant. The doctor's record reflected that claimant had injured his wrist on August 18, 2017 "while doing defensive tactic punching drills for work." The report stated that claimant had experienced "significant pain[,] swelling[,] and discomfort following an episode of heavy contact and impact activity doing drills while working in a training exercise for his employment." The doctor diagnosed claimant's injury as a "comminuted distal radius fracture of left wrist."

Appellant filed a claim with the Commission for benefits based on the August 18, 2017 injury to his wrist. Following a hearing, the deputy commissioner found that claimant had not proved a compensable injury by accident because "the evidence in the record suggest[ed] that the claimant's injury occurred gradually over a period of time as the result of repetitive . . . punching during the afternoon of August 18, 2017." Claimant requested review.

The full Commission reversed the deputy commissioner, finding that claimant's wrist injury did not arise from repetitive events but was a "discrete and specific injury" attributed to "defensive tactic punching drills for work."[2] The Commission noted that "[t]he eight-hour training session on August 18, 2017 during which [claimant] participated provided the necessary rigidity of temporal precision to constitute one event." The Commission concluded, however, that "[t]he defensive tactics punching training undertaken on August 18, 2018 [sic] was one 'piece of work'" and that claimant "sustained an injury caused by a particular piece of work occurring at a reasonably definite time."

ANALYSIS

As the appellant in this case, DMV must demonstrate that the Commission's ruling was reversible error. See Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012). "[W]hether a

---

[2] DMV does not challenge the Commission's finding that claimant's injury did not arise from repetitive events.

claimant suffered 'an "injury by accident" presents a mixed question of law and fact, because it involves both factual findings and the application of law to those facts.'" Riverside Regional Jail Auth. v. Dugger, 68 Va. App. 32, 37 (2017) (quoting Van Buren v. Augusta Cty., 66 Va. App. 441, 446 (2016)). The Commission's factual findings are binding on appeal if supported by credible evidence, but "[w]hether those facts prove the claimant suffered an 'injury by accident' is a question of law." Id. Thus, "we review that portion of the Commission's decision *de novo*." Van Buren, 66 Va. App. at 446.

To be compensable under the Virginia Workers' Compensation Act, an injury by accident must "aris[e] out of and in the course of the [claimant's] employment." Code § 65.2-101. The claimant must prove, by a preponderance of the evidence, that an identifiable incident occurred at some reasonably definite time, resulting in an obvious sudden mechanical or structural change in his body that is causally connected to the incident. See Hoffman v. Carter, 50 Va. App. 199, 212 (2007); Va. Dep't of Transp. v. Mosebrook, 13 Va. App. 536, 537 (1992). "[A] gradually incurred injury is not an injury by accident within the meaning of the Act," Hoffman, 50 Va. App. at 213 (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 175 (1996)), so that "injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not 'injuries by accident,'" Dugger, 68 Va. App. at 38 (quoting Morris v. Morris, 238 Va. 578, 589 (1989)).

Here, the parties agree that claimant's injury did not arise from "repetitive trauma." Id. Thus, the dispositive issue is whether claimant's injury was caused by an event "bounded with rigid temporal precision." Morris, 238 Va. at 589. The evidence established that claimant fractured his left wrist on August 18, 2017, during the afternoon training session that consisted of four hours of punching drills. Claimant's wrist was not swollen at the beginning of the day's training, and he first noticed swelling in his wrist within sixty to ninety minutes after he had

finished the punching drills. When he sought medical treatment the next day, he reported that he had injured his wrist while "hitting a mannequin." The records of the hand surgeon who evaluated claimant several days later reflected that claimant had fractured his left wrist on August 18, 2017, "while doing defensive tactic punching drills for work." Accordingly, claimant proved that his injury occurred during a reasonably definite time and was a compensable injury by accident. See Dugger, 68 Va. App. at 41-44 (affirming Commission's award of benefits to claimant, who had injured her right knee during a four-hour defensive tactics training class).

DMV acknowledged at oral argument that its complaint, in fact, was not with the Commission's finding that claimant's injury occurred during the afternoon punching session. Rather, DMV disagrees with the Commission's statement in its decision that "[t]he eight-hour training session on August 18, 2017 . . . provided the necessary rigidity of temporal precision to constitute one event." DMV contends that the statement cannot be reconciled with the Commission's finding that claimant's injury occurred during the afternoon punching drills.[3]

Read in the context of the Commission's entire ruling, we conclude that the Commission's reference to the "eight-hour training session" may be considered dicta, as it was not essential to deciding the case. See, e.g., Newman v. Newman, 42 Va. App. 557, 565-66 (2004) (en banc) (explaining that portions of a decision that are not essential to the disposition of

---

[3] DMV also asserts that the statement conflicts with Morris, which held that to establish "an 'injury by accident,' a claimant must prove that the *cause* of his injury was an identifiable incident or sudden precipitating event and that it resulted in an *obvious sudden mechanical or structural change in the body*." Morris, 238 Va. at 589. DMV posits that the Commission's "eight-hour" comment will lead to an easing of the Morris standard, resulting in an employee claiming he is entitled to benefits simply because his injury "happened some time while he was at work." That is not the fact of this case, however, as the record established that claimant's injury occurred during the afternoon punching drills, a period "bounded with rigid temporal precision," as required by Morris. Id.; see Dugger, 68 Va. App. at 42. Further, the Commission's comment was dicta and does not establish binding precedent. See Newman v. Newman, 42 Va. App. 557, 566 (2004) (en banc) ("*Dicta* cannot 'serve as a source of binding authority in American jurisprudence.'" (quoting United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003) (en banc))).

a case are dicta and do not constitute binding authority).  The Commission clearly found that claimant's injury by accident occurred during the punching drills that took place in the afternoon training session, and the record supports that finding.  Thus, we affirm the Commission's award of medical benefits to claimant.

Affirmed.

Russell, J., concurring.

I fully concur in both the reasoning and result of the majority opinion. The evidence was sufficient to support a conclusion that the injury occurred during the afternoon session, and the Commission so found.[4] As DMV concedes, such a finding renders this case indistinguishable from this Court's decision in Riverside Reg'l Jail Auth. v. Dugger, 68 Va. App. 32 (2017). Accordingly, as the majority concludes, the Commission did not err in awarding benefits to claimant.

I write separately to address the Commission's assertion that "[t]he eight-hour training session on August 18, 2017 during which [claimant] participated provided the necessary rigidity of temporal precision to constitute one event." Although I agree with the majority that the statement represents mere dicta, it is an incorrect statement of the law, and thus, is dicta with the potential to cause great mischief going forward.

As the Commission opinion acknowledges, a claimant, to establish that he has suffered an injury by accident, must prove "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." Hoffman v. Carter, 50 Va. App. 199, 212 (2007) (quoting Chesterfield Cty. v. Dunn, 9 Va. App. 475, 476 (1990)). With respect to the timing requirement, it is well established that the claim regarding the alleged incident must be "bounded with rigid temporal precision." Morris v. Morris, 238 Va. 578, 589 (1989); see also Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 293 (1943) (holding that an alleged incident

---

[4] Although the record often references "punching drills," the Commission expressly credited evidence that the injury occurred during "the punching drill." It noted that "claimant consistently attributed his injury to this drill. Dr. McDermott, the treating physician, stated a causal relationship between the left wrist fracture and the punching drill." As DMV concedes, any fair reading of the record leads to the conclusion that whatever activities made up "the punching drill" occurred in the afternoon session.

"must be shown to have occurred at some reasonably definite time" (internal quotation marks and citation omitted)).

Although requiring such temporal proof may seem harsh in individual cases, the necessity of such a rule in a no-fault regime such as that established by the Virginia Workers' Compensation Act is apparent:  "[I]f the time of the causative event cannot be fixed, the employer will be unable to investigate the claim and defend it[.]"[5]  Morris, 238 Va. at 586; see also Aistrop, 181 Va. at 293 (noting that "if the event cannot be fixed with reasonable certainty" there is an increased risk of "fraud").

The "bounded by temporal precision" requirement does not mean that a claimant must identify the exact minute or second that the incident or injury occurs.  See, e.g., Morris, 238 Va. at 589 (recognizing that the inability of a claimant to identify "whether he fell at 11:35 a.m. or 11:45 a.m." does not defeat a claim so long as the claimant can "fix the time of the occurrence with reasonable accuracy"); see Richard E. Brown, Inc. v. Caporaletti, 12 Va. App. 242, 243-44 (1991) (stating that a claimant need not prove that the incident and injury "occur[ed] within a specific number of seconds or minutes" so long as he proves it "occur[ed] within a reasonably definite time" (internal quotation marks and citation omitted)).  Thus, both the Supreme Court and this Court have recognized that the description of an event lasting longer than mere seconds

_____

[5] This is especially true given Virginia's rejection of the positional risk doctrine.  See, e.g., Baggett Transp. Co. of Birmingham, Ala. v. Dillon, 219 Va. 633, 637-38 (1978).  Although a claimant's burden to demonstrate that his injury arises out of his employment is a distinct requirement, it often will be tied in a practical sense to the requirement that a claimant prove with temporal precision when the incident and resulting injury occurred.  Injuries can and do occur in the workplace due to compensable causes and causes that are not compensable because they are mere risks of the neighborhood, such as climbing stairs or eating ordinary foods.  See Bernard v. Carlson Companies-TGIF, 60 Va. App. 400 (2012).  Because a twisted knee can be the result of a compensable cause that occurs at 10:00 a.m. or the result of slipping on ordinary stairs, a non-compensable cause, that occurs five hours later in the workday, a claimant must be able to specify when the incident occurred to allow the claim to be evaluated properly.  If simply stating that an injury occurred at some point in an eight-hour workday were sufficient, it would be almost impossible to make such distinctions.

or minutes can establish sufficient temporal precision so long as the accompanying circumstances support the conclusion.

In S. Express v. Green, 257 Va. 181, 189 (1999), the Supreme Court held that a claimant who testified that she developed chilblains over a four-hour period of working in a walk-in cooler had identified the incident with sufficient temporal precision because the evidence established that the "chilblains resulted from a single exposure to cold temperature on a definite occasion during the performance of a specific piece of work[.]" Key to the analysis was the continuous or near-continuous exposure to the causative condition, the cold of the walk-in cooler, for the four-hour period.[6]

We applied the reasoning of Green in Van Buren v. Augusta Cty., 66 Va. App. 441 (2016). Van Buren, a firefighter, was involved in the rescue of a 400-pound man who suffered a broken leg in the shower. Id. at 444. During "the thirty to forty-five minute[]" rescue, "Van Buren . . . used a combination of improvisation, brute strength, and equipment to rescue the injured man." Id. Although Van Buren could not identify a specific point during the rescue when he suffered his injury, we held that the entire forty-five-minute period of the rescue "was one event" rather than "numerous discrete events[,]" and thus, the fact that his injury occurred at some point during the rescue provided sufficient temporal precision to meet the requirements of the Act. Id. at 455. Central to our conclusion was the fact that Van Buren suffered a non-cumulative injury while engaged in rescue efforts that were continuous and uninterrupted and that unquestionably arose from his employment.

We again applied the rule in Dugger. Dugger had no pre-existing knee injury when, as part of her employment, she participated in a four-hour defensive tactics class. Dugger, 68

---

[6] In Green, the claimant testified that she worked in the walk-in cooler without interruption for the four-hour period. Employer's witness testified that Green was allowed to take breaks and took at least one. 257 Va. at 184.

Va. App. at 42. The defensive tactics class involved four hours of physical exertion and was characterized as involving a series of "'simulated fights[.]'" Id. at 35. Consistent with the reasoning of Van Buren and Green, both the Commission and this Court concluded that Dugger was entitled to benefits, with this Court noting that "it is clear that Dugger's injury occurred during the four-hour defensive training class—and thus, her injury is sufficiently "bounded by rigid temporal precision." Id. at 42 (quoting Morris, 238 Va. at 539). Again, central to our conclusion was the fact that Dugger suffered a non-cumulative injury that unquestionably arose from her employment as a result of her participation in a four-hour defensive tactics class that was continuous and uninterrupted.

As noted by the majority and conceded by the Commonwealth, the evidence in the instant case brings it within the holding of Dugger. Claimant suffered a non-cumulative injury while participating in the four-hour class on the afternoon in question. From the record before us, the four-hour afternoon class appears to have been continuous and largely uninterrupted. Furthermore, the activities undertaken during the class unquestionably arose from claimant's employment. Accordingly, the Commission, consistent with Dugger, appropriately found that claimant demonstrated an identifiable incident with sufficient temporal precision.

Although expressly relying on Dugger to reach its conclusion, the Commission's assertion that "[t]he eight-hour training session on August 18, 2017 during which [claimant] participated provided the necessary rigidity of temporal precision to constitute one event" might be read as expanding Dugger. Given the facts of this case, such an expansion is inconsistent with binding precedent, including Dugger itself.

The record makes clear that claimant here did not engage in any work activity for eight continuous, largely uninterrupted hours. As the Commission notes in its opinion, claimant, on the day in question "spent eight hours in physical training from 8:00 a.m. through 5:00 p.m. . . .

- 10 -

*with an hour lunch break*." (Emphasis added). Thus, not even the eight-hour time period referenced by the Commission, let alone the physically demanding training that included punching, was continuous and largely uninterrupted. This represents a significant difference from the prior cases.

As noted above, central to the conclusion that the claimants established the requisite temporal precision in Green, Van Buren, and Dugger was the fact that each claimant was engaged in activities that unquestionably arose from their employment for a continuous and uninterrupted period during which a non-cumulative injury was suffered. The logic being that, although the claimants could not identify the exact minute or second that the injury occurred, they had sufficiently identified an uninterrupted time period in which there was little question that the injury arose from a risk of the employment. The employers were on notice of the specific time period in question, thus allowing them to defend the claim. Their defenses proved to be unsuccessful because the evidence all but foreclosed the possibility of a non-compensable cause during the period of time specified, assuring that the claim was, in fact, compensable.

The eight-hour period that the Commission appears to suggest may be sufficient provides no such notice or assurance. By the Commission's own findings, the eight-hour period was not a discrete, uninterrupted period of work-related activity because it was interrupted by the lunch hour. Such a break in continuity, especially given that many activities undertaken during a lunch break pose risks that do not arise from employment, cf. Bernard, 60 Va. App. at 410 (eating ordinary food is not a risk of the employment), differentiates such a time period from those in Green, Van Buren, and Dugger. The interruption in time and the introduction of events and risks that do not naturally arise from the employment render the eight-hour period referenced by the Commission too indeterminate to meet a claimant's obligation to identify the incident with temporal precision.

In conclusion, the Commission's assertion amounts to a rule allowing a claimant to meet the burden of establishing temporal precision by simply asserting that an injury occurred at some unidentified point in a full workday that included both risks of the employment and risks of the neighborhood. Such an assertion is an incorrect statement of the law.[7]

---

[7] I recognize that the Commission's assertion could be read by some as a logical extension of Dugger *if* Dugger is viewed in isolation. After all, what is the real difference between a four-hour period and an eight or nine-hour period? However, precedent should not be viewed in isolation. Dugger is consistent with the prior cases because an employee suffered a non-cumulative injury while engaged in a continuous and uninterrupted period of activity that unquestionably arose from her employment. The lack of continuity in the eight-hour period the Commission sought to champion here takes it outside the rationale of the prior cases, including Morris, which remains binding authority. As a result, the Commission's attempt to extend Dugger represents a bridge too far.