COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Malveaux and Senior Judge Clements
Argued by videoconference


JIHAD JAY SIBAI

v.      Record No. 0678-20-4

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
DECEMBER 29, 2020

STERLING JEWELERS AND
 XL SPECIALTY INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Benjamin T. Boscolo (Krista N. DeSmyter; ChasenBoscolo Injury
Lawyers, on brief), for appellant.

Nirav Patel (Alex Mayfield; Franklin & Prokopik, PC, on brief), for
appellees.


Jihad J. Sibai ("claimant") appeals a decision of the Virginia Workers' Compensation

Commission ("the Commission") denying certain claims for benefits. He argues that the

Commission erred in (1) finding that he did not suffer a compensable injury by accident to his

left ear, nose, face, or neck; (2) finding that his post-concussion seizures are not causally related

to his work injury; and (3) denying his claim for temporary total disability benefits for the period

August 15 to November 30, 2018. For the following reasons, we affirm the Commission's

decision.

## I. BACKGROUND

"Under our standard of review, when we consider an appeal from the Commission's

decision, we must view the evidence in the light most favorable to the party who prevailed

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

before the Commission." City of Newport News v. Kahikina, 71 Va. App. 536, 539 (2020). Here, the prevailing party was Sterling Jewelers and XL Specialty Insurance Company (collectively "employer").

<u>Claimant's Injury and Subsequent Medical History</u>

Claimant worked for employer as a jewelry salesman. He testified that on October 8, 2017, while he was preparing a display case, the access panel he was holding up fell against the left side of his head. After that, claimant stated, "I don't remember anything. . . . I was [un]conscious for, I don't know how . . . long."

When claimant revived, his co-workers were gathered around him. Someone had put ice on claimant's nose, and his colleagues told him that his nose had been bleeding. Claimant's manager told him that he was bleeding from his ear. His co-workers asked claimant if he wanted to go to the hospital, but he told them that he was okay. However, claimant testified his bleeding continued, and he began to experience left ear pain, a bad headache, and blurred vision. Claimant's manager sent him home.

Claimant stated that his blurred vision and headache persisted during his drive home. He also stated that he subsequently experienced a seizure at home, during which he bit his tongue and experienced pain in his head and throughout his body. Claimant denied experiencing such symptoms prior to his workplace accident.

Claimant's wife, Reem Tamim, testified that when claimant returned home on October 8, 2017, he told her that he had been injured at work and had been bleeding from his nose and ear. Claimant was dizzy, and about two hours after his return home, he started shaking and bit his tongue. Tamim stated that this behavior lasted for approximately fifteen seconds before claimant relaxed.

Claimant first sought treatment on October 19, 2017, at the emergency room of Inova Fairfax Hospital. During that visit, claimant was diagnosed with a post-concussion headache and a closed head injury. A CT scan revealed no acute traumatic intracranial abnormalities. Treatment notes indicate that claimant had suffered "1 episode of seizure like activity" and that a neurological evaluation "report[ed] . . . likely post-concussion seizure."

Claimant followed up with a neurologist, Dr. Kurukumbi, who placed claimant on Keppra, an anti-seizure medication. The doctor's November 3, 2017 treatment notes indicate that claimant was complaining of imbalance and had fallen down the stairs that day. Dr. Kurukumbi recommended an MRI and an EEG and that claimant continue taking Keppra. Dr. Kurukumbi's subsequent notes reflect that claimant's EEG indicated a "[n]ormal study . . . within normal limits for age" and "no evidence of epileptiform activity."

Claimant again saw Dr. Kurukumbi on January 5, 2018. Treatment notes from that visit indicate that claimant had undergone an MRI, the results of which were "non lesional for epilepsy." The doctor continued to prescribe Keppra for claimant.

In response to a questionnaire from employer, Dr. Kurukumbi opined on February 9, 2018, that claimant had not suffered any permanent impairment from his head injury or concussion.

On March 20, 2018, Dr. Raham Alsukari of the Virginia Cardiovascular Group examined claimant. Dr. Alsukari noted that claimant complained of shortness of breath, heart palpitations, dizziness, and left upper extremity and left facial numbness. The doctor's notes further indicate that claimant had a history of hypertension and "[e]pilepsy, [u]nspecified," as well as of nosebleeds which had begun eight years previously. Claimant reported that he was an everyday

smoker. Dr. Alsukari diagnosed claimant with uncontrolled hypertension and noted that he "has symptoms of TIAs," or transient ischemic attacks.[1]

Claimant's medical records reflect that Dr. Mohammed Labbaf of the NOVA Neurology Center examined claimant on May 16, 2018. Dr. Labbaf's notes indicate that claimant reported nosebleeds, high blood pressure, occasional mild dizziness, occasional numbness in the left side of his face, and anxiety. Dr. Labbaf diagnosed claimant with post-concussional syndrome, hypertension, anxiety disorder, dizziness and giddiness, and "[u]nspecified convulsions" and continued claimant's Keppra medication.

During a subsequent examination by Dr. Labbaf on June 6, 2018, the doctor noted that he had reviewed claimant's head and neck CT scans and reported that all of the images were normal. Dr. Labbaf also referred claimant for an EEG, the results of which were "within normal limits."

Claimant again saw Dr. Labbaf on July 24, 2018. Dr. Labbaf noted claimant's normal test results and instructed him to "taper off" his Keppra medication.

Claimant testified that after he had his EEG, Dr. Labbaf told him "you don't have any kind of seizure, so . . . you can stop the [Keppra]." After he stopped taking Keppra, claimant stated, he began experiencing "lots of symptoms," including involuntary movements of his arms and legs, blurry vision, numbness, and difficultly sleeping. At times, claimant was unable to go to sleep for several days. Claimant denied having experienced any involuntary movements before he stopped taking Keppra.

---

[1] See Transient Ischemic Attack, Taber's Cyclopedic Medical Dictionary (20th ed. 2001) (defining a TIA as "[a] neurological deficit, having a vascular cause, that produces stroke symptoms" including "weakness of one half of the face or half of the body . . . or sudden loss of balance").

Tamim testified that on August 15, 2018, she took claimant to his primary care doctor because he had been unable to sleep for three or four days and had begun to hallucinate. The doctor prescribed Ambien for claimant, and he began taking the medication. However, the medication did not help claimant and his hallucinations worsened. Shortly before midnight on August 15, Tamim took claimant to the emergency room.

There, claimant reported experiencing "worsening jerking movements," visual hallucinations, and insomnia over the previous few days. Claimant stated that he had been off Keppra for five days but had taken one dose earlier that evening in response to his jerking movements. Medical staff noted "[i]ntermittent jerking of hands or tapping of hands that stops when [claimant is] distracted." Further, claimant was experiencing intermittent hallucinations that "could . . . be stress related, medication related or due to sleep deprivation." Claimant was given Ativan and went home with Tamim.

Tamim testified that a few hours later, during the early hours of August 16, 2018, claimant had a seizure and fell down the stairs at home. Claimant himself testified that he "fell down from the stairs, had a seizure and I don't remember what happened after that." Claimant broke his left shoulder during the fall.

Claimant returned to the emergency room where Dr. Vidya Raju examined him and noted that it was "[u]nclear if patient had seizure episode . . . causing the fall or not." Dr. Raju indicated that during a previous evaluation, Tamim had reported that claimant "drank only occasionally. During further questioning she now reports that [claimant] had been drinking more heavily for 2 months and stopped drinking in the last 7-10 days. Certainly alcohol withdrawal is a consideration." Dr. Raju's clinical impressions included "[a]lcohol withdrawal, [f]all, HALLUCINATIONS, POSSIBLE SEIZURE."

The following day, Dr. Naila Rana, a neurologist, examined claimant and noted that he had been taking Keppra "for questionable seizures" but that his medication had been discontinued. Dr. Rana indicated that "Korsakoff's psychosis could be the possibility" of claimant's symptoms, "as he does have a history of alcohol use." She further indicated that Keppra can cause agitation and mental status changes. Her notes from an August 29, 2018 evaluation reported that a brain MRI and a spinal tap did not show any intracranial abnormalities.

On September 6, 2018, Dr. Rana completed a Department of Labor certification of claimant's health condition. She stated that claimant's medical conditions included "seizure disorder, head injury, memory difficulties, visual disturbances, L[eft] shoulder dislocation, and concussion." Dr. Rana indicated that claimant's conditions dated from "Oct. 2017. lately Aug. 15, 2018."

<u>Claim for Benefits and Subsequent Proceedings</u>

On March 1, 2019, claimant filed a claim for benefits alleging compensable injuries by accident to his head, nose, left ear, face, neck, and left shoulder with numbness of his left arm and fingers. Claimant also alleged compensable conditions including seizures, loss of memory and concentration, and blurry vision. Further, claimant sought temporary total disability benefits for the period August 15 to November 30, 2018.[2] Employer stipulated to a compensable injury to claimant's head but contested the other alleged injuries and conditions.

The medical records and testimony noted above were submitted to the deputy commissioner, together with an additional document prepared by Dr. Rana on October 31, 2019.

---

[2] Claimant also sought medical and temporary total disability benefits for the period October 19 to November 21, 2017 and temporary partial disability benefits for the period November 22, 2017 to August 14, 2018. The deputy commissioner awarded temporary total disability benefits for the period November 3 to November 21, 2017 and temporary partial disability benefits for the period November 22, 2017 to January 5, 2018. Those awards are not at issue in this appeal.

That document, entitled "To whom it may concern," was written on one of Dr. Rana's prescription blanks and opined that "[b]ecause of the concussion / head injury [claimant] can have seizure and lowering or stoping [*sic*] the seizure medication can again cause seizure."

The deputy commissioner found that claimant had failed to prove compensable injuries to his nose, left ear, face, or neck because the evidence did not demonstrate any obvious sudden mechanical or structural changes to those body parts. He also found that any loss of memory and concentration was unrelated to claimant's work accident and denied the claim with respect to blurry vision, because although claimant had testified about experiencing blurry vision, the medical records did not contain any complaints of the condition.

Further, the deputy commissioner found that claimant had failed to prove that his seizures were causally related to his workplace accident. In making his determination, the deputy commissioner noted that multiple tests, including an MRI and two EEGs, had failed to reveal any evidence of seizures or epileptic activity. Additionally, Dr. Alsukari had identified claimant's seizures as "unspecified" and indicated that his symptoms, including dizziness and facial and left arm numbness, might be related to his preexisting hypertension. Dr. Labbaf had been unable to identify the cause of claimant's seizures, and Dr. Kurukumbi had not issued a causation opinion. Thus, of all the physicians who had examined claimant, only Dr. Rana had connected claimant's seizures to his workplace accident. Her September 2018 Department of Labor certification had indicated a diagnosis of seizure disorder with an onset date in October 2017, and her October 2019 note included the statement that "claimant 'can' have seizures because of 'the concussion/head injury." However, the deputy commissioner concluded, Dr. Rana's opinion did not meet the standard of reasonable probability required for expert testimony and was simply an opinion "of possibility and not probability." Thus, Dr. Rana's opinion did not "overcome" the other evidence in the record, "especially when, in light of that evidence, Dr. Rana failed to

- 7 -

explain why she believes the claimant's seizures could be related to the injuries sustained in the work accident." While acknowledging claimant's testimony that he had not suffered from seizures prior to that accident, the deputy commissioner concluded that the record did not support a finding of causation based upon the temporal relationship between claimant's accident and his seizures.

Having found claimant's seizures unrelated to his compensable work accident, the deputy commissioner likewise found that claimant's fall, shoulder injuries, and left arm and hand numbness were not caused by a compensable injury sustained in his workplace accident. Based upon this finding, the deputy commissioner declined to award claimant temporary total disability benefits for the period August 15 to November 30, 2018.

Upon claimant's request for review, the full Commission affirmed the decision of the deputy commissioner. With respect to claimant's claim for injuries to his nose, left ear, face, and neck, the Commission noted claimant's testimony that after he regained consciousness, he had been informed by his co-workers about injuries to his ear and nose. However, there had been no testimony or written statements about such injuries from any co-workers. Further, claimant "did not even describe an injury to his neck, and he vaguely consented to having pain in his left ear and face. The provided testimony was simply insufficient, particularly given the designated medical record, i.e., an emergency department visit void of complaints about injuries to these body parts." Thus, the Commission concluded, the deputy commissioner had not erred in finding that claimant had failed to prove obvious sudden mechanical or structural changes to his nose, left ear, face, or neck.

With respect to claimant's "[s]eizures and [s]equelae," including blurry vision and loss of memory, the Commission reviewed claimant's and Tamim's testimony as well as the medical evidence. While acknowledging the testimony and Dr. Rana's "opinion of a possible causal

- 8 -

relationship" between claimant's workplace injury and the seizures and sequalae, the Commission concluded that negative diagnostic studies and the evidence from several other physicians' treatment records "sufficiently substantiated the [d]eputy [c]ommissioner's assessment and affordance of probative value."

Having determined that claimant's seizures and resulting shoulder injury were not compensable, the Commission also affirmed the deputy commissioner's denial of temporary total disability benefits for the period August 15 to November 30, 2018.

Claimant appealed to this Court.

## II. ANALYSIS

### A. <u>Injuries to the Left Ear, Nose, Face, and Neck</u>

Claimant argues that the Commission erred in finding that he did not suffer a compensable injury by accident to his left ear, nose, face, or neck.

"The [C]ommission's determination of whether a claimant suffered 'an "injury by accident" presents a mixed question of law and fact, because it involves both factual findings and the application of law to those facts. The Commission's factual findings bind us as long as credible evidence supports them.'" <u>Riverside Reg'l Jail Auth. v. Dugger</u>, 68 Va. App. 32, 37 (2017) (quoting <u>Van Buren v. Augusta Cnty.</u>, 66 Va. App. 441, 446 (2016)). This principle applies "even [if] there is evidence in the record to support a contrary finding." <u>City of Waynesboro v. Griffin</u>, 51 Va. App. 308, 317 (2008) (quoting <u>Morris v. Badger Powhatan/Figgie Int'l, Inc.</u>, 3 Va. App. 276, 279 (1986)). However, "whether those facts prove the claimant suffered an 'injury by accident' is a question of law." <u>Dugger</u>, 68 Va. App. at 37 (quoting <u>Van Buren</u>, 66 Va. App. at 446). "Therefore, we review that portion of the Commission's decision *de novo*." <u>Van Buren</u>, 66 Va. App. at 446.

Claimant argues that the Commission erred because his uncontradicted testimony about his workplace accident demonstrated obvious sudden mechanical and structural changes in the relevant body parts as a result of a display case door slamming onto his head. Claimant further argues that the Commission's determination that his evidence was insufficient because it was based upon what his co-workers told him was erroneous, because the Commission's rules and case law permit it to accept hearsay testimony. Thus, "[t]he Commission's refusal to consider hearsay, despite being allowed [to] by its rules and the precedents of this Court, should be overruled."

Code § 65.2-101 limits injuries compensable under the Virginia Workers' Compensation Act ("the Act") to "injur[ies] by accident arising out of and in the course of the [claimant's] employment." To prove such a compensable injury by accident, "a claimant must prove: '(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change.'" Dugger, 68 Va. App. at 38 (quoting Hoffman v. Carter, 50 Va. App. 199, 212 (2007)). Such an injury must be proved by a preponderance of the evidence. Rush v. Univ. of Va. Health Sys., 64 Va. App. 550, 555-56 (2015).

As with other factual questions, the occurrence of an obvious sudden mechanical or structural change in the body may be proved either by direct or circumstantial evidence, including medical evidence or a claimant's testimony. See United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238 (2011). "Any medical opinion offered into evidence 'is not necessarily conclusive, but is subject to the [C]ommission's consideration and weighing.'" Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26 (2005) (quoting Hungerford Mech. Corp v. Hobson, 11 Va. App. 675, 677 (1991)). Further, "the rule is well established that '[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly

deducible from the evidence, are within the prerogative of the [C]ommission.'" Pro-Football, Inc. v. Uhlenhake, 37 Va. App. 407, 417 (2002) (first alteration in original) (quoting Kim v. Sportswear, 10 Va. App. 460, 465 (1990)).

Claimant's argument is unpersuasive. Here, the record supports that the Commission considered claimant's testimony about his workplace accident and that, contrary to claimant's argument, it did not find the evidence of left ear, nose, face, and neck injuries insufficient because of a refusal to consider any hearsay inherent in claimant's testimony. Rather, the Commission's opinion makes clear that it considered claimant's testimony, including accounts of what his co-workers told him were injuries to his nose and left ear, but simply found that testimony to be without corroboration. Further, the evidence supports that the Commission considered claimant's medical records and found that they did not support claimant's testimony about any neck, nose, left ear, or facial injuries, in particular because claimant's initial post-accident medical records from the emergency room did not indicate any complaints of such injuries. Consequently, the Commission found that claimant had failed to prove, by a preponderance of the evidence, any obvious sudden mechanical or structural changes to his left ear, nose, face, or neck. It was the Commission's prerogative to weigh the conflicting evidence with respect to any such injuries and to make this determination.

Further, credible evidence supports the Commission's finding. Although claimant testified as to some of the injuries at issue, he provided no corroborating evidence in the form of testimony about those injuries from co-workers or other witnesses. Additionally, the medical records closest in time to claimant's workplace accident—the emergency room notes from eleven days after the accident occurred—do not contain any references to the alleged injuries. Because credible evidence in the record supports the Commission's finding that claimant failed

- 11 -

to prove any obvious sudden mechanical or structural changes to his left ear, nose, face, or neck, we are bound by and affirm that finding.  See Dugger, 68 Va. App. at 37.

### B.  Post-concussive Seizures

Claimant next argues that the Commission erred in finding that his seizures are not causally related to his compensable workplace injury.

"The [C]ommission's determination regarding causation is a finding of fact." Farmington Country Club, Inc., 47 Va. App. at 26.  The Commission's decisions as to factual questions are conclusive and binding on this Court if they are supported by credible evidence. Hayes, 58 Va. App. at 238; see also Code § 65.2-706(A).  Thus, where credible evidence supports the Commission's factual findings, "[t]he fact that there is contrary evidence in the record is of no consequence."  Samartino v. Fairfax Cnty. Fire and Rescue, 64 Va. App. 499, 506 (2015) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).  "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."  Smith-Adams v. Fairfax Cnty. Sch. Bd., 67 Va. App. 584, 590 (2017) (quoting Wagner Enters., Inc., 12 Va. App. at 894).

A factual finding with respect to causation "need not be based exclusively on medical evidence" and "may be proved by either direct or circumstantial evidence, including . . . 'the testimony of a claimant.'"  Farmington Country Club, Inc., 47 Va. App. at 26 (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176 (1996)).  As previously noted, "[a]ny medical opinion offered into evidence 'is not necessarily conclusive, but is subject to the [C]ommission's consideration and weighing.'"  Id. (quoting Hungerford, 11 Va. App. at 677).  The weight assigned to such an opinion is a factual matter within the purview of the Commission.  Paramont Coal Co. Virginia, LLC v. McCoy, 69 Va. App. 343, 358 (2018).

Claimant argues that the Commission erred in affirming the deputy commissioner's finding that there was no causal relationship between his workplace accident and his seizures because his testimony, taken together with the medical evidence, provided a basis "from which the Commission [could] reasonably infer medical causation [of] his post-concussive seizures."

We are not persuaded by claimant's argument. Here, the Commission clearly considered both claimant's testimony about the cause of his seizures and the medical evidence with respect to such seizures. The Commission weighed all of this evidence and found that, contrary to claimant's argument, the preponderance of the evidence did not prove that claimant's seizures were causally related to his workplace injury. The record supports this conclusion. As noted by the Commission, the medical diagnostic tests related to claimant's seizures did not establish any such causal connection. Further, as also noted by the Commission, the only one of claimant's physicians who opined as to a possible causal relationship was Dr. Rana. However, her opinion was simply that "[b]ecause of the concussion / head injury [claimant] can have seizure" and that "lowering or stoping [*sic*] the seizure medication can again cause seizure." Thus, Dr. Rana's opinion as to causation was equivocal and, as noted by the deputy commissioner, lacked any representation that it was made to a reasonable degree of medical probability. See Farmington Country Club, Inc., 47 Va. App. at 28 (holding that "[t]he word 'may' is insufficient to prove causation" and simply expresses possibility); Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 388 (1998) ("It is well established that '[a] medical opinion based on a "possibility" is . . . purely speculative.'" (first alteration in original) (quoting Spruill v. Commonwealth, 221 Va. 475, 479 (1980))). Accordingly, as the medical record contains no diagnostic test evidence or unequivocal medical opinion establishing a causal link between claimant's workplace accident and his seizures, and notwithstanding claimant's own testimony, it cannot be said that the

Commission erred in finding the evidence insufficient to prove such a causal link.  Thus, we affirm the Commission's finding that claimant's seizures are not compensable.

## C.  Temporary Total Disability Benefits

Claimant argues that the Commission erred in denying him temporary total disability benefits for the period August 15 to November 30, 2018.  Claimant sought these benefits in connection with the left shoulder injury he sustained when he fell down the stairs during a seizure.  He argues that because his workplace injury caused his seizures, and because a seizure in turn caused his fall and resulting left shoulder injury, his left shoulder injury was a compensable consequence of his workplace injury.  Here, having affirmed the Commission's finding that claimant's seizures are not compensable, we also affirm the Commission's ruling that claimant's left shoulder injury was not compensable and its denial of temporary total disability benefits for the period August 15 to November 30, 2018.  See Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 90 (2005) (*en banc*) (discussing the doctrine of compensable consequences (also called the chain of causation rule) and noting that it only applies where a subsequent injury was "'caused by' an earlier, compensable injury").

## III.  CONCLUSION

We hold that the Commission did not err in finding that claimant failed to prove a compensable injury by accident to his left ear, nose, face, or neck or in finding that claimant's seizures are not causally related to his compensable workplace injury.  We further find no error in the Commission's denial of temporary total disability benefits for the period August 15 to November 30, 2018.  Accordingly, we affirm the Commission's decision.

Affirmed.