PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, O'Brien and AtLee
Argued at Lexington, Virginia

ROBERT VAN BUREN, SR.

v.        Record No. 1975-15-3

AUGUSTA COUNTY AND
 VIRGINIA ASSOCIATION OF
 COUNTIES GROUP SELF INSURANCE

OPINION BY
JUDGE RICHARD Y. ATLEE, JR.
JULY 19, 2016

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Bradford M. Young (HammondTownsend, PLC, on briefs), for
> appellant.
>
> Richard D. Lucas (Lucas & Kite, PLC, on brief), for appellee.

Robert Van Buren, Sr. appeals a decision of the Virginia Workers' Compensation

Commission ("the Commission").  He asserts that the Commission erred when it found his injury

was "not the result of an identifiable incident which occurred at a reasonably definite time" but

rather was "gradually incurred" and "the result of repetitive or cumulative trauma."[1]  We reverse.

I. BACKGROUND

"On appeal, this Court views the evidence in the light most favorable to the prevailing

party below."  Town & Country Hosp., LP v. Davis, 64 Va. App. 658, 660, 770 S.E.2d 790, 791

(2015).  In this case, Augusta County and the Virginia Association of Counties Group Self

Insurance (collectively "employer") prevailed below.  "Factual findings by the commission that

are supported by credible evidence are conclusive and binding upon this Court on appeal."

---

[1] We have consolidated Van Buren's two assignments of error, as they raise essentially the same question.

Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339-40, 641 S.E.2d 129, 132 (2007) (quoting

S. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993)). The following

facts are supported by credible evidence.

A. Injury

At the time of his injury, Van Buren was fifty-two years old and working as a firefighter.

While on duty on July 25, 2014, he responded to a call requesting assistance for an elderly man

who had fallen in the shower. The man weighed approximately 400 pounds and had broken his

leg during the fall. When Van Buren arrived, the man was crumpled awkwardly in the shower,

his broken limb crushed under the weight of his body. For the next thirty to forty-five minutes,

Van Buren and his colleagues used a combination of improvisation, brute strength, and

equipment to rescue the injured man.

Initially, Van Buren and another firefighter used a sheet as a sling, balancing on the ledge

of the shower, looping the sheet under the injured man's arms, then elevating and holding the

man to relieve pressure on his leg. From there, Van Buren helped maneuver the man onto a

towel, then onto a flat-bottomed, flexible stretcher. Van Buren and the others slowly dragged

and pushed this stretcher the length of the hallway, along the floor. Van Buren testified: "I had

stabilized his broken leg with my left arm and had to pull down the hallway towards the cot with

my right arm." At the end of the hallway, Van Buren helped hoist the man off the flat-bottomed

stretcher and onto a wheeled stretcher. Van Buren and the other firefighters then hauled the

wheeled stretcher out of the house and down a hill. At the bottom of the hill, Van Buren helped

heave the wheeled stretcher into the back of the ambulance.

Once Van Buren had dealt with the crisis and loaded the injured man into the ambulance,

he noticed for the first time "a pain on the outside [o]f [his] arm." At the hearing in front of the

deputy commissioner, in response to a question about whether he ever felt a sudden onset of pain

while helping the man, Van Buren testified that he had not initially noticed the pain because the injured man was "hollering" and because of "the adrenaline with the call and everything." However, "as soon as [he] closed the door and got ready to go and walk[ed] around the unit to drive," Van Buren noticed the pain in his arm. He then drove the injured man to the hospital.

## B. Treatment

Four days after the rescue, Van Buren called an employee hotline and reported that he was experiencing pain in his right shoulder. Over the next several months, he visited various medical professionals: a nurse practitioner at his family doctor's office, a physical therapist, his family doctor, and doctors at a hospital affiliated with the University of Virginia. In each instance, Van Buren described being hurt while assisting the man during the rescue on July 25, 2014. Ultimately, an MRI revealed a disc herniation at C5-6. Doctors at the University of Virginia surgically removed the herniated disc material in October of 2014 and performed both a hemilaminotomy and a foraminotomy.

## C. Commission Proceedings

Van Buren filed an initial claim for benefits with the Commission on September 11, 2014, and an amended claim several months later. A hearing before the deputy commissioner occurred in March of 2015. Van Buren testified at the hearing, and both parties introduced exhibits. Among the evidence introduced by employer was a letter signed by Dr. James LaGrua, Van Buren's physician. In that letter, Dr. LaGrua affirmed that it was his opinion, "to a reasonable degree of medical probability," that Van Buren suffered a cervical herniation "as a result of the twisting, lifting, awkward movements and exertion required to extract the gentleman from the shower, into the bathroom, down the hall, onto the gurney and into the ambulance."

In April of 2015, the deputy commissioner awarded Van Buren temporary total disability, lifetime medical benefits, and attorney's fees. Employer appealed that award to the full

- 3 -

Commission. In November of 2015, a divided Commission reversed and vacated the deputy commissioner's decision. Van Buren then noted his appeal to this Court.

## II. ANALYSIS

### A. Standard of Review

Van Buren and employer disagree as to the standard of review in this case. Van Buren asserts that, because the Court is reviewing "the Commission's application of the law to undisputed facts," the standard is *de novo*. By contrast, employer asserts that the standard of review "is based on factual findings and not *de novo*." Neither party is entirely correct. Rather, reviewing the Commission's determination that Van Buren did not suffer an "injury by accident" presents a mixed question of law and fact, because it involves both factual findings and the application of law to those facts. The Commission's factual findings bind us as long as credible evidence supports them. Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477, 624 S.E.2d 681, 683 (2006). But "whether those facts prove the claimant suffered an 'injury by accident' is a question of law." Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168, 543 S.E.2d 619, 621 (2001). Therefore, we review that portion of the Commission's decision *de novo*. Nelson Cty. Sch. v. Woodson, 45 Va. App. 674, 677-78, 613 S.E.2d 480, 482 (2005). Additionally, "[t]o the extent we must interpret a statute, that is a question of law that we review de novo." Powell v. Commonwealth, 289 Va. 20, 26, 766 S.E.2d 736, 739 (2015).

### B. Commission's Findings of Fact

In addition to the facts recited in Part I, *supra*, the Commission found that "the medical record fully substantiated that [Van Buren] suffered a cervical herniated disc," but that "the mere existence of a medical condition does not establish that an identifiable, work-related incident transpired and caused the physical problem." The Commission went on to observe that "the medical record establishes that [Van Buren] had been experiencing right shoulder symptoms

- 4 -

prior to July 25, 2014" and that he had "informed health care providers of at least a two-week history of shoulder complaints when he began seeking medical treatment." It is true that the injury hotline notes stated: "Caller states that he started with right shoulder pain about 2 weeks ago. Caller states that it is getting worse due to him lifting patient's [sic] all day at work." Furthermore, evaluation notes from Van Buren's visit to a physical therapist two days later indicated, in part, that he complained of "slight R shoulder pain that has been ongoing, but has noticed an increase in R shoulder/lateral arm pain since helping lift a 400lb load for work."

The Commission's findings of fact continued:

> Notably, [Van Buren] described his general, work-related heavy lifting requirements and the *development* of pain, at some vague point, following the lifting of the 400-pound patient. (emphasis added). Dr. Lagrua similarly agreed that the disc herniation occurred "at some point" while [Van Buren] performed multiple physical acts which included twisting, lifting, moving awkwardly and removing the patient from the shower and house.
>
> . . . At most, the evidence showed that [Van Buren] suffered a herniated disc at some point, perhaps as a result of one of [sic] more of the strenuous activities he performed over an approximate 40-minute period. . . .
>
> . . . At no point in the hearing transcript did [Van Buren] testify or even claim that his injury occurred at a moment in time when he lifted a patient. . . . At no point did [Van Buren] testify or even claim that his injury occurred while lifting a patient, or while performing any of the other strenuous and awkward activities in which he was engaged in extricating the 400-pound patient from the shower and transporting him to the emergency vehicle.

Ultimately, the Commission took the approach that, even assuming that the injury occurred on July 25, 2014, the causation was too vague to trigger coverage of the Workers' Compensation Act. The Commission did not make a conclusive finding as to the actual date of the injury, however to the extent the Commission found that the injury occurred before July 25, 2014, that conclusion was clearly erroneous and unsupported by the evidence.

- 5 -

Van Buren noted that he had experienced pain in his shoulder for several weeks prior to July 25, 2014. However, all of his reports to various health professionals indicated that it was the heavy lifting required of him on July 25, 2014 that caused an actual injury and that such injury was to his cervical spine, not to his shoulder. These reports tied his pain and injury directly to the actions he took assisting the injured man on July 25, 2014. Most importantly, Van Buren's own treating physician, Dr. LaGrua, linked the injury to the rescue Van Buren undertook on July 25, 2014. In his letter, Dr. LaGrua affirmed that it was his opinion, "to a reasonable degree of medical probability," that Van Buren suffered a cervical herniation "as a result of the twisting, lifting, awkward movements and exertion required to extract the gentleman from the shower, into the bathroom, down the hall, onto the gurney and into the ambulance."[2] The Commission erred when it ignored this uncontested medical conclusion, put forth by employer.

Any conclusion that the injury occurred prior to July 25, 2014 was speculation.[3] That leaves us to review the Commission's legal interpretation of the evidence, the application of the law to that evidence, and the meaning of the relevant statutes. We undertake this review *de novo*.

### C.  Definition of "Injury"

The word "injury" is a term of art in the workers' compensation arena. Aside from occupational diseases (which are absent in the case before us), the Workers' Compensation Act applies only to injuries "by accident arising out of and in the course of the employment." Code

---

[2] Employer itself offered this letter into evidence. Employer may not now attempt to render uncertain that which its own evidence made certain. See, e.g., Hurley v. Bennett, 163 Va. 241, 252, 176 S.E. 171, 175 (1934) (observing that when a party has made "an election between inconsistent courses of action, he will be confined to that which he first adopts" and that such an election, "if made with knowledge of the facts, is itself binding").

[3] Even if Van Buren experienced some prior discomfort, the injury on July 25, 2014 would have been compensable as aggravation of a preexisting condition. See Blue Ridge Mkt. of Va., Inc. v. Patton, 39 Va. App. 592, 596, 575 S.E.2d 574, 586 (2003).

§ 65.2-101. From this statutory definition come three requirements to prove an injury: "(1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment." Southland Corp. v. Parson, 1 Va. App. 281, 284, 338 S.E.2d 162, 163 (1985). The only requirement at issue here is the first: whether Van Buren's injury was caused, statutorily, "by an accident."[4] To prove that an injury occurred by accident, an injured party must show "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." Hoffman v. Carter, 50 Va. App. 199, 212, 648 S.E.2d 318, 325 (2007) (quoting Chesterfield Cty. v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990)). We find that Van Buren made such showings.

### D. Case Law

The Commission stated: "We do not find that the record proved, by a preponderance of the evidence, that [Van Buren]'s herniated disc resulted from a specific, identifiable work-related incident." It noted that, while the injury "could have occurred as a result of one of the numerous activities he performed during that period, or . . . as a result of a combination of some or all of those activities," the injury was not compensable because Van Buren "could not identify a specific event which caused his injury, or, for that matter, whether his injury was even caused by a specific event as opposed to the cumulative effect of the actions he performed during those 40 minutes." The Commission reached its conclusion because it believed that "[t]he holding of Morris v. Morris, 238 Va. 578, 385 S.E.2d 858 (1989), controls this case." We do not agree that Morris controls the outcome of this case.

---

[4] Employer offers no meaningful argument that, if Van Buren was in fact injured by accident, the injury did not occur in the course of employment or arise out of employment.

*1. Morris v. Morris*

Morris was a consolidation of three similar cases, all involving injuries resulting from repetitive activities. Morris addressed whether these injuries could constitute injuries "by accident," as the Code requires. The facts of the three cases comprising Morris warrant discussion.

In the first case, the claimant was required to "lift 96 cartons of fiberglass, each weighing approximately 50 pounds, from a loading dock and lower them into the bed of his truck, which was positioned eighteen inches lower than the dock." Morris, 238 Va. at 581, 385 S.E.2d at 860. This activity took approximately forty-five minutes, and at no point during that time did the claimant feel any injury or discomfort. Later that day, he went to the hospital and was advised he had suffered a heart attack. The claimant had "a total occlusion of a coronary artery" and "had evidently suffered from heart disease for some time." Id. In the second case, the claimant ruptured a cervical disc sometime during a one-and-a-half hour period when he "and a co-worker unloaded seven steel doors from a truck." Id. at 582, 385 S.E.2d at 860. The claimant "could not recall any specific incident which caused his injury." Id. The third case involved a claimant installing ceiling panels. During this installation, "the claimant stood on a scaffold and held the panels, each weighing 30 to 35 pounds, over his head while securing them in place with a drill and screw gun." Id. at 583, 385 S.E.2d at 861. After several hours of work, the claimant felt ill and ultimately was hospitalized, where it was discovered that he had suffered a heart attack. Medical records indicated that the claimant "had smoked two packs of cigarettes a day since age 20" and "was suffering from a 60% to 70% narrowing of one coronary artery, and a 100% occlusion of another." Id.

The Supreme Court reversed the awards of compensation to all three claimants in Morris, stating:

> Our decisions have always required proof of an "accident, identifiable incident, or sudden precipitating event." [Lane Co. v.] Saunders, 229 Va. [196,] 199, 326 S.E.2d [702,] 703-04 [(1985)]. Such events are inevitably "bounded with rigid temporal precision." [Bradley v. Philip Morris, U.S.A., 1 Va. App. 141, 145, 336 S.E.2d 515, 517 (1985).]
>
> It is true that we have described such an event as an "identifiable incident that occurs at [some] *reasonably definite time*." [Saunders, 229 Va. at 199], 326 S.E.2d at 703 (emphasis added). The italicized words allow for the problem of proof: an injured employee may know that he fell from a ladder just before lunchtime, but he may not know whether he fell at 11:35 a.m. or 11:45 a.m. He is only required to fix the time of the occurrence with reasonable accuracy, although the causative event was in fact "bounded with rigid temporal precision."
>
> In each of the three cases now before us, the injury *made its appearance* suddenly "at a particular time and upon a particular occasion." But, as we said in Aistrop [v. Blue Diamond Coal Co., 181 Va. 287, 24 S.E.2d 546 (1943)], that is not enough. In order to carry his burden of proving an "injury by accident," a claimant must prove that the *cause* of his injury was an *identifiable incident or sudden precipitating event* and that it resulted in an *obvious sudden mechanical or structural change in the body*. Saunders, 229 Va. at 199, 326 S.E.2d at 703-04 (quoting VEPCO v. Cogbill, 223 Va. 354, 356, 288 S.E.2d 485, 486 (1982)). None of the claimants in the cases before us carried that burden. We hold that injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not "injuries by accident" within the meaning of Code § 65.1-7.

Id. at 588-89, 385 S.E.2d at 864-65 (referring to former Code § 65.1-7, the predecessor statute to Code § 65.2-101). Van Buren's case is distinguishable in several respects from the cases in Morris.

First, Van Buren, unlike the claimants in Morris, was not engaged in repetitive activity. Installing multiple overhead ceiling panels, unloading and installing seven steel doors, and lifting ninety-six cartons full of fiberglass: any injury resulting from these activities might be

- 9 -

attributable to "repetitive trauma," a category of injury not covered by the Workers' Compensation Act. Van Buren, by contrast, was engaged in a variety of actions that involved lifting, holding, twisting, pulling, pushing, grabbing, and bending. Second, Van Buren's injury was not the result of "cumulative events," because the forty-five-minute period during which Van Buren aided the injured man provided the necessary rigidity of temporal precision to constitute one "event." Third, unlike the complainants in Morris, Van Buren saw a physician who diagnosed his injury as resulting directly from work undertaken on a date certain, during a specific event. Dr. LaGrua concluded "to a reasonable degree of medical probability," that Van Buren suffered a cervical herniation "as a result of the twisting, lifting, awkward movements and exertion required to extract the gentleman from the shower, into the bathroom, down the hall, onto the gurney and into the ambulance." This unequivocal medical link between the work performed and the injury sustained distinguishes Van Buren's injury from each of the injuries suffered in Morris. As such, we conclude that Van Buren's injury occurred at a reasonably definite time.[5] Our conclusion is further supported by cases decided since Morris.

### 2. More Recent Precedent

Several cases decided since Morris have discussed "injury by accident." Although Morris remains valid, these subsequent cases have refined its application, and therefore assist us in deciding Van Buren's case.

---

[5] It would also be wrong to discount the adrenaline Van Buren mentioned. By necessity, firefighters act in the face of dangerous and fast-moving situations where life and safety, of both firefighters and those they serve, are in jeopardy. Adrenaline is not only a natural consequence of such work; it is a physical state that often inures to the benefit of all involved (firefighters, the entities employing them, and the citizens they serve). Van Buren acted in the face of an emergency, with an elderly man in extreme pain. To the extent adrenaline masked the exact moment of the onset of pain resulting from an injury incurred in such a scenario, public policy favors treatment of the entire forty-five-minute rescue as the "reasonably definite time" within which the injury occurred.

In R&R Constr. Corp. v. Hill, 25 Va. App. 376, 488 S.E.2d 663 (1997), this Court affirmed an award of compensation to a claimant who, like Van Buren, suffered a disc herniation. The injury occurred while moving "five to seven five-gallon paint buckets . . . within a storage shed." Id. at 378, 488 S.E.2d at 664. The Court noted that "to constitute injury by accident it is not necessary that there should be an extraordinary occurrence in or about the work engaged in," id. at 379, 485 S.E.2d at 664 (quoting Kemp v. Tidewater Kiewit, 7 Va. App. 360, 363, 373 S.E.2d 725, 726 (1988)), and that "injuries may be caused by one or several 'sudden [or immediate] events' that cause the mechanical changes to occur in the body," id. (alteration in original). The Court held:

> Lifting one or more of the buckets was the "sudden precipitating event" or events that caused the discs to herniate, which was "an obvious sudden . . . structural change in the body." The fact that the claimant did not or could not identify precisely which bucket or buckets he was lifting when the disc or discs herniated does not constitute a failure to prove that an immediate or sudden event or events caused the discs to herniate.

Id. at 380, 488 S.E.2d at 665 (alteration in original). Likewise, Van Buren's inability to identify precisely which of several "sudden precipitating events" during the rescue caused his disc herniation does not vitiate his claim that a sudden event caused his injury.

In S. Express v. Green, 257 Va. 181, 509 S.E.2d 836 (1999), the Supreme Court affirmed the compensability of an injury caused by the claimant's exposure to cold temperatures over the course of several hours while working inside a walk-in freezer. The Court distinguished the case from Morris by noting that the claimants in Morris did not prove their injuries were caused by "an identifiable incident or event at work," and specifically observed that "evidence of causation, especially medical evidence, was noticeably absent." Id. at 187, 509 S.E.2d at 840. The Court found the claimant's injury was:

> not an "injury of gradual growth . . . caused by the cumulative effect of *many acts done or many exposures* to conditions

- 11 -

> prevalent in the work, no one of which can be identified as the cause of the harm . . . ." Aistrop, 181 Va. at 293, 24 S.E.2d at 548. (Emphasis added). Instead, the [injury was] "the result of some particular piece of work done or condition encountered on a definite occasion . . . ." Id. In other words, [claimant's injury] resulted from a single exposure to cold temperature on a definite occasion during the performance of a specific piece of work, i.e., an "identifiable incident." Morris, 238 Va. at 589, 385 S.E.2d at 865. It was not caused by repeated exposures over a period of months or years.

Id. at 189, 509 S.E.2d at 841 (first, second, and fourth alterations in original). Similarly, Van Buren's injury was not an injury "of gradual growth" or the result of "exposures over a period of months or years." Rather, it was a consequence of one specific "piece of work": the rescue on July 25, 2014.

In Hoffman v. Carter, 50 Va. App. 199, 648 S.E.2d 318 (2007), this Court affirmed an award of compensation to a claimant injured when he inhaled dust while performing demolition of plaster walls over the course of three to four hours. The Court noted that "[t]hough an injury by accident must be 'bounded with rigid temporal precision,' . . . an injury need not occur within a specific number of seconds or minutes . . . but instead, must occur within a 'reasonably definite time.'" Id. at 213, 648 S.E.2d at 325 (alterations in original) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 175, 468 S.E.2d 152, 154 (1996)). The Court observed that the claimant "testified that he worked three to four hours when he noticed 'a lot of dust and stuff in [his] nostrils[,]' and he began 'coughing the stuff up pretty much.'" Id. (alterations in original). The Court found the evidence "sufficient to support a finding that [claimant]'s exposure to plaster dust was 'bounded by rigid temporal precision,' and thus constituted 'an identifiable incident.'" Id. at 214, 648 S.E.2d at 325. The "identifiable incident" in Van Buren's case was only forty-five minutes long, as opposed to the three to four hours in Hoffman.

In each of the above three cases decided since Morris, the General Assembly had the opportunity to modify the law at issue if it was dissatisfied with the appellate courts'

- 12 -

interpretation of that law. Its decision not to do so was an implicit acceptance of the validity of the courts' holdings. See, e.g., McQuinn v. Commonwealth, 20 Va. App. 753, 757, 460 S.E.2d 624, 626 (1995) ("The legislature is presumed to know the decisions of the appellate courts of the Commonwealth and to acquiesce therein unless it countermands them explicitly.").

We find the entire rescue undertaken by Van Buren was one "piece of work," and the entire forty-five-minute period was one event, not numerous discrete events. We find that this event was an "identifiable incident" and that Van Buren's disc herniation was a "sudden mechanical or structural change in the body." Hoffman, 50 Va. App. at 212, 648 S.E.2d at 325 (quoting Dunn, 9 Va. App. at 476, 389 S.E.2d at 181). Finally, we find "a causal connection between the incident and the bodily change." Id. We agree with the deputy commissioner that, "to require [Van Buren] to pinpoint the exact moment of the onset of pain during an adrenaline[-]fueled rescue attempt would yield a ridiculous and unjust result."

### III. CONCLUSION

The Commission erred in finding Van Buren did not suffer an injury by accident, and erred in denying him medical benefits and temporary total disability benefits. Accordingly, we reverse the Commission's decision and remand the case to the Commission to enter judgment consistent with this holding.

Reversed and remanded.

- 13 -