COURT OF APPEALS OF VIRGINIA

Present:  Judges Chafin, Russell and Senior Judge Clements
Argued at Salem, Virginia

**PUBLISHED**

CITY OF CHARLOTTESVILLE

OPINION BY
JUDGE TERESA M. CHAFIN
JULY 23, 2019

v.      Record No. 1999-18-3

WILLIAM SCLAFANI

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Brian J. McNamara (Brian A. Richardson; Faraaz A. Jindani; Ford
Richardson, PC, on briefs), for appellant.

Bradford M. Young (HammondTownsend, PLC, on brief), for
appellee.

William Sclafani, a Charlottesville police officer, injured his left arm and shoulder while

playing the role of a restrained suspect during a SWAT team training activity.  The City of

Charlottesville ("the City") now appeals the decision of the Virginia Workers' Compensation

Commission awarding Sclafani temporary total disability from July 21, 2017, through August 15,

2017 in addition to medical benefits.  On appeal, the City argues that the Commission erred in

finding that Sclafani suffered a compensable, discrete injury by accident arising out of

employment.[1]  For the reasons that follow, we reverse the Commission's finding and remand for

further fact finding.

---

[1] In a second assignment of error, the City contends that the medical evidence failed to
support the full period of disability.  Because we reverse the Commission's finding of an injury
by accident, it is unnecessary to address this assignment on appeal.

<u>Background</u>

"On appeal from a decision of the . . . Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below," in this case, Sclafani. <u>Anderson v. Anderson</u>, 65 Va. App. 354, 361 (2015) (quoting <u>Artis v. Ottenberg's Bakers, Inc.</u>, 45 Va. App. 72, 83 (2005)). So viewed, the facts are as follows.

On May 9, 2017, Sclafani played the role of a suspect who needed to be restrained for a SWAT team training activity. The training lasted from approximately 8:00 a.m. until between 4:30 and 5:00 p.m. In his role as a suspect, Sclafani was repeatedly handcuffed, thrown to and picked up off the ground while in handcuffs. Sclafani testified that while he did feel some mild discomfort throughout the day, he denied feeling a "pop" or sudden acute pain. In fact, he stated in his deposition testimony that he advised his doctors that there was no immediate onset of significant pain. However, as he was leaving the training, Sclafani noticed that he could not straighten his left arm on the steering wheel. Later that evening, he could not raise his left arm straight up or down. Sclafani testified that the pain did not really begin until the following day.

While Sclafani reported his injury to his sergeant, he did not seek treatment with Kristine Shannon, a nurse practitioner, until May 12, 2017. Shannon advised him to see a specialist if he did not improve within three weeks. Sclafani ultimately sought treatment from Dr. William T. Grant, an orthopedist, who gave him a steroid injection and referred him to physical therapy. Sclafani underwent surgery on his left shoulder on July 26, 2017. On August 10, 2017, the orthopedist opined that Sclafani could resume light-duty work on August 16, 2017. Sclafani's light-duty status was continued on September 7, 2017. On September 28, 2017, Sclafani was released to recommence full duty work.

Sclafani filed a claim alleging injury by accident to his left shoulder and arm and seeking an award of medical benefits and temporary total disability benefits from July 21, 2017, to August 16, 2017. The City asserted that Sclafani did not suffer a compensable, discrete injury by accident. The City further alleged that the medical evidence did not support the period of disability alleged by Sclafani.

Following a hearing, the deputy commissioner issued an opinion on July 20, 2018, finding that Sclafani failed to prove his arm and shoulder injury was compensable. The deputy commissioner further explained that although Sclafani did have a clearly defined injury, there was no acute onset of pain. To be compensable, the deputy commissioner concluded that the Commission would have to broaden the definition of "rigid temporal precision" to include injuries that occurred at an unidentified point during an eight-hour period. Because Sclafani was unable to identify a certain point during the eight-hour training at which his injury occurred, the deputy commissioner denied Sclafani's claim for benefits.

Sclafani appealed to the full Commission. The full Commission reversed the deputy commissioner's denial of Sclafani's claim. Based on the factual similarities between the two cases, the Commission relied in large part on its own decision in Bandy v. Department of Motor Vehicles, JCN VA00001370700 (Va. Wrk. Comp. Nov. 2, 2018), in reversing the deputy commissioner's decision. The Commission found that Sclafani's case was similar to Bandy in that "the eight-hour training session . . . provided the necessary rigidity of temporal precision to constitute one event, and [Sclafani] suffered a 'discrete and specific' traumatic injury to his shoulder as a result." The City appealed to this Court.

Analysis

On appeal, the City contends that Sclafani failed to prove that he suffered a compensable, discrete injury by accident arising out of employment. The City further argues that Sclafani did not meet his burden to show an identifiable incident that occurred at "some reasonably definite time" on May 9, 2017. Finally, the City argues that the medical evidence presented failed to support the period of disability alleged.

It is the burden of the City, the appealing party in this case, to demonstrate on appeal that the Commission's ruling constituted reversible error. Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012). "The Commission's factual findings bind [this Court] as long as credible evidence supports them," Riverside Reg'l Jail Auth. v. Dugger, 68 Va. App. 32, 37 (2017) (quoting Van Buren v. Augusta Cty., 66 Va. App. 441, 446 (2016)), such that "the existence of 'contrary evidence . . . in the record is of no consequence,'" City of Waynesboro v. Griffin, 51 Va. App. 308, 312 (2008) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229 (1991)). "However, whether those facts prove the claimant suffered an 'injury by accident' is a question of law" which this Court reviews *de novo*. Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168 (2001).

The Virginia Workers' Compensation Act requires that an injury by accident "aris[e] out of and in the course of the [claimant's] employment" to be compensable. Code § 65.2-101. The claimant must prove, by a preponderance of the evidence, that he sustained a compensable injury. See Va. Dep't of Transp. v. Mosebrook, 13 Va. App. 536, 537 (1992). In addition, the claimant bears the burden of establishing that an identifiable incident occurred at a reasonably definite time that resulted in an obvious sudden mechanical or structural change in his body that was causally connected to the incident. See Hoffman v. Carter, 50 Va. App. 199, 212 (2007). "A gradually incurred injury is not an injury by accident within the meaning of the Act." Id. at

213 (quoting <u>Dollar Gen. Store v. Cridlin</u>, 22 Va. App. 171, 175 (1996)). Thus, "injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not 'injuries by accident.'" <u>Dugger</u>, 68 Va. App at 38 (quoting <u>Morris v. Morris</u>, 238 Va. 578, 589 (1989)). Instead, regarding the element of timing, the claim regarding the incident must be "bounded with rigid temporal precision." <u>Morris</u>, 238 Va. at 589.

The Virginia Workers' Compensation Act establishes a no-fault scheme that makes temporal proof necessary. If the time of the incident cannot be determined, an employer cannot properly investigate and defend the claim. <u>Id.</u> at 586. However, the Supreme Court and this Court have held that an incident lasting for more than a few seconds or minutes can be enough to establish the "rigid temporal precision" required when the surrounding circumstances support the conclusion. <u>See id.</u> at 589 (holding that the claimant's inability to identify "whether he fell at 11:35 a.m. or 11:45 a.m." does not necessarily defeat a claim as long as a claimant can "fix the time of the occurrence with reasonable accuracy"); <u>Richard E. Brown, Inc. v. Caporaletti</u>, 12 Va. App. 242, 243-44 (1991) (holding that a claimant only needs to prove that an injury "occur[ed] within a reasonably definite time").

The Supreme Court contemplated the question of "whether chilblains that the claimant suffered as a result of being exposed to cold temperature in a walk-in cooler during a four-hour period constitute[d] an 'injury by accident' under [the Act]" in <u>S. Express v. Green</u>, 257 Va. 181, 183 (1999). The Court found that the claimant did in fact establish an injury by accident because her "chilblains first appeared during the time that she spent in the cooler, thus at a particular time and place and upon a particular occasion." <u>Id.</u> at 189. Further, the Court held that the claimant's chilblains resulted from "the performance of a specific piece of work" – the nearly continuous exposure to the cold of the walk-in cooler for a four-hour period. <u>Id.</u>

This Court applied the same logic in <u>Van Buren v. Augusta Cty.</u>, 66 Va. App. 441 (2016), in which the claimant, a firefighter, was injured during the rescue of a 400-pound man from an accident in a shower. <u>Id.</u> at 444. Claimant, however, could not identify the specific moment during the forty-five-minute rescue at which he was injured. This Court held that the claimant suffered a non-cumulative injury as he was continuously "engaged in a variety of actions that involved lifting, holding, twisting, pulling, pushing, grabbing, and bending" during the rescue effort. <u>Id.</u> at 452. We further held that the rescue itself was to be considered "one event," and therefore, because the claimant's injury occurred sometime during the rescue, there was sufficient evidence to prove the temporal precision requirement. <u>Id.</u> at 455.

This Court addressed a similar issue in <u>Dugger</u>, again, applying the same reasoning applied in <u>Green</u> and <u>Van Buren</u>. In <u>Dugger</u>, the claimant, a correctional officer, was injured while taking part in a four-hour-long defense tactics class during which she participated in simulated fights, "which logically require[d] pushing, grabbing, bending, and similar motions." <u>Dugger</u>, 68 Va. App. at 35. Thus, the claimant's "movements during the defensive training were not repetitive in nature." <u>Id.</u> at 41-42. Further, this Court noted that the claimant's injury clearly occurred during the defensive training class that was continuous and uninterrupted, and therefore sufficiently "bounded by rigid temporal precision," entitling her to benefits. <u>Id.</u> at 42.

Most recently, this Court decided <u>Department of Motor Vehicles v. Bandy</u>, No. 1878-18-2 (Va. Ct. App. Apr. 30, 2019).[2] Like in this case, the dispositive issue on appeal in <u>Bandy</u> was not whether the claimant's injury arose from "repetitive trauma," but whether his injury was caused by an event "bounded with rigid temporal precision." <u>Id.</u> at *4. The claimant in <u>Bandy</u> was engaged in an eight-hour training session where he was involved in a variety of

---

[2] Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value. Rule 5A:1(f). <u>See</u> <u>Otey v. Commonwealth</u>, 61 Va. App. 346, 351 n.3 (2012) (noting that unpublished opinions are persuasive but not binding precedent).

- 6 -

defensive techniques, takedowns, holds, and several distinct types of punches. Id. The afternoon session consisted of four hours of punching drills. Id. The claimant noticed that his wrist started to swell approximately an hour to an hour and a half after the conclusion of the punching drills. Id. at *4-5. The next day, the claimant informed the treating physician that he injured his wrist while "hitting a mannequin." Id. at *5. He was diagnosed with a fractured hand, and the medical records indicated that he was injured "while doing defensive tactic punching drills for work," during an approximately four-hour window of time. Id. This Court held that his "injury occurred during a reasonably definite time and was a compensable injury by accident." Id. However, we specifically noted that "[r]ead in the context of the Commission's entire ruling, we conclude that the Commission's reference to the 'eight-hour training session' may be considered dicta, as it was not essential to deciding the case.'" Id.

Judge Russell, in his concurring opinion, states that although he agrees "with the majority that the statement represents mere dicta, it is an incorrect statement of the law, and thus, is dicta with the potential to cause great mischief going forward." Id. at *7 (Russell, J., concurring).

> The eight-hour period that the Commission appears to suggest may be sufficient provides no such notice or assurance. By the Commission's own findings, the eight-hour period was not a discrete or uninterrupted period of work-related activity because it was interrupted by the lunch hour. Such a break in continuity, especially given that many activities undertaken during lunch pose risks that do not arise from employment differentiates such a time period from those in Green, Van Buren, and Dugger. The interruption in time and the introduction of events and risks that do not naturally arise from the employment render the eight-hour period referenced by the Commission too indeterminate to meet a claimant's obligation to identify the incident with temporal precision.

Id. at *11. In concluding, the concurrence notes that "the Commission's assertion amounts to a rule allowing a claimant to meet the burden of establishing temporal precision" by claiming that an injury occurred at any unidentified point in a full workday, including risks of employment as

well as risks of the neighborhood.  Id. at *12.  "Such an assertion is an incorrect statement of law."  Id.

In this case, the City attempts to distinguish the instant case from Dugger by asserting that Sclafani was involved in training that spanned eight hours as opposed to the four-hour time span in Dugger.  "[U]nder some circumstances . . . a claimant need not be able to pinpoint the exact moment of injury in order for it to be compensable as an 'injury by accident' under the Act."  Dugger, 68 Va. App. at 44.  Therefore, an "identifiable incident" is present if the injury was "the result of some particular piece of work done or condition encountered on a definite occasion."  Green, 257 Va. at 189 (quoting Aistrop v. Blue Diamond Coal Co., Inc., 181 Va. 287, 293 (1943)).  While Sclafani was involved in an eight-hour training, he testified that he did not notice any problems during the four hours before lunch.  However, at some point during the four post-lunch hours, he felt a "tweak" but no real pain.  As he was driving home from the training, he felt pain in his left shoulder.  At his deposition, Sclafani testified that his left shoulder pain started on the day of the training while driving home.  He later testified that he believed his left shoulder injury occurred sometime after lunch on the day of the training.  Sclafani further confirmed that there was no "pop" or sudden acute pain.

It appears from the record, however, that the Commission assumed but failed to find that Sclafani's testimony established an identifiable incident with sufficient temporal precision.  The training spanned eight hours, with an interruption for lunch.  The assumption that Sclafani sustained a non-cumulative injury during the last four hours of training was justified based on Sclafani's own testimony.  However, there was no specific finding to this effect.  Therefore, we remand this case for the Commission to make a factual finding consistent with this opinion as to whether Sclafani's injury occurred during the four post-lunch hours of the training.

Conclusion

We reverse the Commission's decision that Sclafani's injury met the burden of establishing temporal precision and remand to the Commission for further fact finding consistent with this opinion.

<u>Reversed and remanded.</u>