COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Malveaux and Athey
Argued by teleconference

FARRISH OF FAIRFAX AND
 VADA GROUP SELF-INSURANCE ASSOCIATION
                                                    MEMORANDUM OPINION* BY
v.      Record No. 2029-19-2                        JUDGE CLIFFORD L. ATHEY, JR.
                                                    JUNE 16, 2020
MARK FASZCZA

          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Frederick T. Schubert, II (Pietro F. Sanitate; Midkiff, Muncie &
          Ross, P.C., on briefs), for appellants.

          M. Thomas McWeeny (Koonz McKenney Johnson & DePaolis,
          L.L.P., on brief), for appellee.


        Farrish of Fairfax and VADA Group Self-Insurance Association (collectively,

"employer") appeal from the November 22, 2019 decision of the Virginia Workers'

Compensation Commission ("Commission") awarding Mark Faszcza ("claimant") temporary

total disability benefits and medical benefits for a right foot injury, MRSA, chronic infections,

and inflammatory bowel disease. Employer contends that the Commission erred in (1) "finding

that the [c]laimant experienced a compensable injury by accident arising out of and in the course

of his employment," (2) "finding that any disability and medical treatment is related to the

alleged injury by accident," (3) "finding that [c]laimant suffered a compensable consequence of

the alleged injury by accident," and (4) "finding that the [c]laimant is entitled to any

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

compensation and medical benefits under the Act."[1]  Finding no error, we affirm the

Commission's decision.

## I. BACKGROUND

"On appeal from a decision of the . . . Commission, the evidence and all reasonable

inferences that may be drawn from that evidence are viewed in the light most favorable to the

party prevailing below," in this case, claimant.  See Anderson v. Anderson, 65 Va. App. 354, 361

(2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)).  So

viewed, the evidence before the Commission was as follows.

In August 2016, claimant worked for Farrish of Fairfax, an auto dealer, as a service

manager.  His duties included monitoring the service drive, dispatching work to the service

technicians, and ensuring that the technicians promptly repaired the vehicles.  During the

morning, claimant would be located primarily in the service drive interacting with customers

seeking service on their vehicles.  Because customers expected service on their vehicles to be

completed by late afternoon, claimant primarily spent afternoons interacting with technicians in

the shop area of the dealership ("service bays").[2]  Claimant addressed any delays through these

interactions with technicians by explaining any delays to customers as needed.  As a result,

claimant was almost constantly in the service bays between 4:00 p.m. and 6:00 p.m. Monday

through Friday, a time he described as "business full blast" on the premises.

---

[1] We do not consider the merits of employer's second and fourth assignments of error because they are subsumed by employer's remaining assignments of error and thus do not merit independent review.  Furthermore, employer cites no standard of review or argument in support of the second and fourth assignments of error.  Appellants must brief "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error."  Rule 5A:20(e).  "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration."  Hoffman v. Carter, 50 Va. App. 199, 210 n.6 (2007) (quoting Budnick v. Budnick, 42 Va. App. 823, 833 (2004)).

[2] Photographs entered into evidence depicted this area.

As claimant explained, the service technicians are "there to fix cars. And so, debris does get onto the floors . . . technicians are not known to always be the cleanest guys in the world."[3] Claimant had two lot porters who cleaned the floors in the service bays "every evening" after 6:00 p.m. when the technicians had left for the day. Claimant testified that between 4:00 p.m. and 6:00 p.m., all the service bays were occupied by technicians working on vehicles, and debris—like trash, clips, screws, fasteners, welding material, pieces of gasket material, and pieces of plastic—littered the floor.

Employer's injury report reflects that claimant's injury occurred on Tuesday, August 30, 2016, at 4:00 p.m. Claimant testified that he "went directly home" after work that day. When claimant arrived at his home, he walked upstairs to his bedroom and began removing his shoes and socks. It was then that he and his wife, Renate Plank ("wife"), first noticed that blood was spurting from a puncture wound at the bottom of his right foot. Due to diabetic neuropathy, claimant had no sensation in his feet and had not realized that his foot had been punctured until he and his wife observed the injury.[4] His wife immediately applied a towel to the wound to slow the bleeding and transported claimant to the emergency room for emergency medical treatment of the wound. When they returned home after claimant's injury was treated at the emergency room, claimant inspected the inside of his shoe and saw "a spike sticking up." Claimant

---

[3] Photographs of the debris on the floor in the service bays were admitted into evidence.

[4] Dr. Danielle VonDerLinden ("VonDerLinden"), a podiatrist who treated claimant's foot injury, explained that this condition rendered claimant unable to feel foot pain.

identified the spike as a plastic "automotive fastener"[5] and explained that his only encounter with automotive fasteners would have been in the service bays where technicians performed work. Claimant testified that he had seen fasteners "on the floor just about every day" in the service bays and that on August 30, 2016, he "was in the shop at four o'clock in the [service] bays and the only place where those [fasteners] are is in the [service] bays." Photographs of claimant's shoe and the puncture wound indicated that the wound's location was consistent with where the fastener entered the bottom of his shoe, and a coworker, Kevin Dean ("Dean"), confirmed that automotive fasteners would be "laying on the floor" after technicians removed them from vehicles and were "all over the place."

During the hearing, emergency room records were entered into evidence reflecting that claimant was initially treated for his foot laceration on August 30, 2016.[6] Unfortunately, following the initial treatment, claimant suffered from persistent infections in the ensuing months as the wound failed to heal properly, requiring repeated admissions to the hospital and subsequent surgery. Claimant's infections and antibiotic use from his puncture wound began as early as September 2, 2016. By January 2017, claimant had developed a MRSA infection, requiring further prolonged antibiotic use to ensure that the wound would heal properly.

By July 2017, claimant had also developed severe gastrointestinal issues that Dr. Asma Khapra ("Khapra") eventually diagnosed as Crohn's colitis, which is a type of inflammatory

---

[5] Claimant explained that these fasteners "attach to panels" on vehicles, and he had "only seen these used in automotive and nothing else." Adding that they are for "one-time use," claimant explained that technicians first remove the old fasteners, "normally with pliers," and then use new fasteners to attach a panel to a vehicle. A photograph of an unused fastener was entered into evidence with a photograph of the used fastener that claimant found lodged in his shoe. Dean also testified that the object in the photograph that claimant found lodged in his shoe was a used fastener. Dean testified that these fasteners only have automotive applications.

[6] Because the medical evidence is extensive and the parties are conversant with the record, we only refer to specific records as necessary to explain our decision.

bowel disease ("IBD") that affects the small intestine or ileum (Crohn's disease), the large intestine or colon (colitis), or both (Crohn's ileocolitis or Crohn's colitis). Khapra prescribed monthly infusions of Remicade to alleviate claimant's symptoms, which would include stomach pain, bloating, and severe diarrhea.

During the July 8, 2019 hearing before the deputy commissioner, Dr. Todd Eisner ("Eisner"), an expert witness who regularly treats IBD, testified by *de bene esse* deposition on behalf of claimant. He opined that as a consequence of the foot injury and resulting broad-spectrum antibiotic treatment, claimant developed Crohn's colitis. Eisner specifically opined that "within a reasonable degree of medical probability, as there were no other known etiologies, [claimant's] Crohn's ileocolitis developed as a result of his prolonged broad-spectrum antibiotic use in 2016" and "had he not needed long term broad spectrum antibiotics, [claimant] would not have severe Crohn's ileocolitis at this time, requiring high dose[s] of an immunocompromising biologic agent Remicade, to control his disease."

Eisner traced the development of claimant's Crohn's colitis to the initial injury by explaining that claimant developed infections from stepping on the fastener, which resulted in claimant's need for antibiotics and the subsequent development of IBD. Eisner found a "close temporal association" between the time claimant stepped on the used fastener and the onset of his IBD symptoms, which occurred within a year of his foot injury and developed only after claimant's prolonged use of broad-spectrum antibiotics. After acknowledging that various etiologies are associated with developing IBD, including a patient's genetics, obesity, diet, gender, ethnicity, upbringing, month of birth, and environmental factors, Eisner opined that those factors had not changed.[7] Furthermore, he testified that claimant was not in an age group that

---

[7] Between the date of the initial injury and claimant's development of symptoms in July 2017, he did not change his sleeping or eating habits, and he had no family history of IBD.

typically developed IBD, and there was no family history of this condition. Thus, "the only change that [claimant] had temporally with the development of his [IBD] was the high doses of and long-standing doses of antibiotics."

Mitch Acker ("Acker"), a technician, admitted to testifying in his previous deposition that it was "fairly common" for there to be debris from repairs on the floor not yet thrown away. Kevin Farrish ("Farrish"), president and majority owner of Farrish of Fairfax, also testified by deposition *de bene esse* that he had supervised claimant for the year and a half he worked as a service manager and that claimant needed to be in the service bays daily to oversee technicians and their work "if he is doing his job," and claimant "did his job and did it well." Farrish admitted that automotive fasteners were used in the service bays "to join two plastic pieces, like mud flaps to the body of the vehicle." He noted that although technicians were to discard used fasteners, technicians were not trained to stop what they were doing to pick up things like a "piece of plastic" on the floor.

The deputy commissioner issued findings on August 19, 2019, concluding that claimant's testimony about the accident was credible. After examining "all of the relevant medical evidence" about the causation of claimant's IBD, including "several reports from medical providers in 2013 relating to [] claimant's colonoscopy,"[8] the deputy commissioner found that "nothing in these records [] suggest[s] that [] claimant's current [IBD] is related to other causes." The deputy commissioner found that "claimant's [IBD] following the accident is causally related to the accident as a compensable consequence thereof." The deputy commissioner explained as follows:

> In weighing the opinions of the medical experts on this issue, we
> find [] Eisner's opinions more persuasive and in keeping with the

---

[8] In 2013, claimant had colon surgery after a colonoscopy revealed "inflammation within the sigmoid colon." However, "the final pathology . . . returned as just chronic inflammation consistent with diverticulitis."

medical literature on this issue. The condition resulted from treatment with antibiotics over a long period of time. The antibiotics were prescribed to treat the infection that resulted from the puncture wound in [] claimant's foot. The infection is part and parcel of the same injury. When treatment for the injury results in further injury the subsequent injury is causally related to the injury by accident.

The Commission subsequently found that "claimant credibly testified to arriving home from work, finding the puncture wound, and then locating the offending object, a fastener, in his shoe after receiving medical care." Though claimant could not pinpoint the time of the puncture due to his neuropathy, "the event clearly transpired at some point after [] claimant put on his shoe in the morning and spent his day at the workplace." The Commission further found that the fastener was "peculiar to the nature of [] claimant's employment" and "lodged in his shoe" and that "this was not a situation where an employee stepped on a more common object, like a nail, or had walked over multiple non-work-related areas that could have been the source of the object or the object remained unknown."

After discussing the gastrointestinal problems claimant developed in July 2017, for which "he sought and received extensive treatment," the Commission found no error in the deputy commissioner's acceptance of Eisner's explanation of "the correlation between [] claimant's extended use of antibiotics, for his infections, and the development of IBD," which was "more persuasive" than the contrary conclusion posited by the experts testifying at the behest of employer. The Commission specifically found the testimony of VonDerLinden, a podiatrist, "not overly probative."[9] The Commission affirmed the deputy commissioner's decision, and this appeal followed.

---

[9] On November 17, 2017, VonDerLinden marked "[a]gree" next to two statements in response to a questionnaire employer sent her: "Because of his diabetic neuropathy, [claimant] could have walked on the object for a short or long time without noticing that his foot had been penetrated by the object," and "I do not think that [claimant] would have contracted ulcerative colitis as a result of this injury, as that is a chronic illness."

## II. ANALYSIS

### A. Injury by Accident Arising out of and in the Course of Employment

Employer first argues that the Commission erred in finding that claimant "experienced a compensable injury by accident arising out of and in the course of his employment."

As appellant, employer must show that the Commission's ruling was reversible error. See City of Charlottesville v. Scalfani, 70 Va. App. 613, 618 (2019). This Court is bound by the Commission's factual findings if credible evidence supports them, "such that 'the existence of contrary evidence . . . in the record is of no consequence.'" Id. (alteration in original) (quoting City of Waynesboro v. Griffin, 51 Va. App. 308, 312 (2008)). This Court reviews *de novo* "whether those facts prove [] claimant suffered an 'injury by accident.'" Id. (quoting Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168 (2001)).

Because the Workers' Compensation Act ("Act") applies only to injuries "by accident arising out of and in the course of the employment," Code § 65.2-101, a compensable injury requires proof of all three of these elements by a preponderance of the evidence, Scalfani, 70 Va. App. at 618-19.

### 1. Injury by Accident

The first element, "injury by accident," is liberally construed in favor of the worker "to carry out the humane and beneficent purposes of the Act." Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 292 (1943). Showing "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change," proves an injury by accident. Van Buren v. Augusta County, 66 Va. App. 441, 449 (2016) (quoting Hoffman v. Carter, 50 Va. App. 199, 212 (2007)). We analyze the first and third components together.

a. Identifiable Incident and Obvious Sudden Change

An identifiable incident "may be caused by one or several 'sudden [or immediate] events' that cause the mechanical changes to occur in the body." See R&R Constr. Corp. v. Hill, 25 Va. App. 376, 378-80 (1997) (alteration in original) (explaining that a claimant who moved several five-gallon paint buckets but could not "identify precisely which bucket or buckets he was lifting" when his back injury occurred nonetheless proved a sudden or immediate event (or events) caused his discs to herniate). In Hill, disc herniation was the "sudden mechanical or structural change in the body." Id. at 379.

Just as the claimant in Hill could not identify which heavy bucket he was moving when his discs herniated, this claimant could not identify the visit in which he stepped on a used fastener due to his neuropathy. As we observed in Hill, this inability to identify the moment the injury occurred does not preclude a finding that an identifiable incident occurred. We find that an identifiable incident occurred when claimant stepped on a used fastener in the service bays on August 30, 2016. Stepping on the used fastener caused it to penetrate claimant's shoe and the bottom of his foot, which resulted in a puncture wound to his foot. This caused an obvious and "sudden mechanical or structural change in [claimant's] body" because the puncture wound changed the anatomy of claimant's foot. See Van Buren, 66 Va. App. at 455 (quoting Hoffman, 50 Va. App. at 212). Credible evidence established the existence of the puncture wound, for which claimant sought medical treatment.

Because credible evidence shows that an identifiable incident occurred and was followed by an obvious, sudden mechanical or structural change in claimant's body, we find that claimant has proved the first and third components of an injury by accident.

b. Reasonably Definite Time

In <u>Riverside Reg'l Jail Auth. v. Dugger</u>, 68 Va. App. 32, 44 (2017), we cited <u>Van Buren</u> as "clarif[ying] that, under some circumstances . . . a claimant need not be able to pinpoint the exact moment of injury in order for it to be compensable as an 'injury by accident' under the Act." After applying this rationale in <u>Dugger</u>, we found that a correctional officer's "four-hour defensive training was sufficiently 'bound with rigid temporal precision'" when she did not walk into the training with a knee injury and felt pain after the physical training ended. <u>Id.</u> at 34-35, 42-43; <u>see also</u> <u>Van Buren</u>, 66 Va. App. at 455-56 (finding that a firefighter's forty-five-minute rescue constituted a reasonably definite time, we explained that requiring him "to pinpoint the exact moment of the onset of pain during an adrenaline[-]fueled rescue attempt would yield a ridiculous and unjust result").

Here, employer contends that a "reasonably definite time" is absent when claimant could not feel the puncture and visited the service bays several times on August 30, 2016. However, our standard of review requires that we view the evidence in the light most favorable to claimant and resolve conflicting inferences in his favor. The rationale underlying the Act also requires this Court to construe liberally whether an injury by accident occurred. The injury report, which employer completed, stated that claimant's injury occurred at 4:00 p.m. on August 30, 2016. Claimant's testimony corroborates employer's report. Claimant testified that he was in employer's service bays that day at 4:00 p.m., and he testified that the only place he could have encountered used fasteners on the floor was in employer's service bays. The Commission found his testimony credible. Requiring claimant to provide the precise time the used fastener punctured his foot would fault him for having neuropathy and "yield a ridiculous and unjust result." <u>See</u> <u>Van Buren</u>, 66 Va. App. at 455-56.

The Commission found that the event causing claimant's injury "clearly transpired at some point after [] claimant put on his shoe in the morning and spent his day at the workplace" on August 30, 2016. Credible evidence supports this finding. In addition to employer's injury report and claimant's testimony showing that the injury occurred at 4:00 p.m. on August 30, 2016, the evidence showed that claimant spent most of his time in the service bays between the hours of 4:00 p.m. and 6:00 p.m. Claimant's foot was not bleeding when he dressed for work that morning. His foot began spurting blood only after the end of that workday when he removed his sock and shoe after going "directly home."

Viewing all of the evidence in the light most favorable to claimant, we find that credible evidence shows claimant's injury occurred at a reasonably definite time, at 4:00 p.m. on August 30, 2016.[10] Thus, claimant has satisfied the second component of an injury by accident.

### c. Causal Connection

When a claimant shows a causal connection between the incident and the bodily change, claimant proves the final component of an injury by accident. Id. at 449.

Here, the Commission rejected employer's contention that no causal connection existed. The Commission found that claimant credibly testified that the offending object was a used fastener, which claimant found in his shoe after receiving treatment for the puncture wound in his foot. Claimant found the puncture wound after removing his shoe and sock after work on August 30, 2016; upon removing them, he observed that his right foot was spurting blood. Both claimant and Dean identified the object in claimant's shoe as part of a used fastener. Contrary evidence is inconsequential under our standard of review. Photographs showed that the

---

[10] Even if we were to disregard employer's injury report and claimant's testimony, which both indicate that the injury occurred at 4:00 p.m., credible evidence would nonetheless support a finding that the injury occurred within a two-hour period, between 4:00 p.m. and 6:00 p.m., on August 30, 2016. A two-hour period is a reasonably definite time under our precedents, especially considering these unique circumstances.

- 11 -

fastener's location in claimant's shoe was consistent with the puncture wound in his foot. Testimony from claimant and Farrish proved that claimant's duties required him to visit the service bays daily. Additional credible evidence, including testimony and photographs, showed that fasteners and other debris were on the floor of the service bays every day while claimant had to perform his duties.

Because credible evidence showed a causal connection between the incident, stepping on the fastener, and the bodily change, the puncture wound in claimant's foot, claimant satisfied the final component of injury by accident, causation.

### 2. Arising out of and in the Course of Employment

In addition to proving that the injury occurred by accident, claimant had to prove that this injury arose "out of and in the course of the employment." Lucas v. Lucas, 212 Va. 561, 562-63 (1972) (quoting Brown v. Reed, 209 Va. 562, 564 (1969)).

To prove that the injury occurred in the course of claimant's employment, claimant must show that the injury took place within the period of employment, where he was "reasonably expected to be, and while he [wa]s fulfilling the duties of his employment or [] doing something . . . reasonably incidental thereto." See id. at 563 (quoting Conner v. Bragg, 203 Va. 204, 208 (1962)). "To prove the 'arising out of' element, [claimant] must show that a condition of the workplace either caused or contributed to" the injury. Southside Va. Training Ctr./Commonwealth of Va. v. Shell, 20 Va. App. 199, 202 (1995) (quoting County of Chesterfield v. Johnson, 237 Va. 180, 184 (1989)). "[I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment," the injury arose out of the employment. Grove v. Allied Signal, Inc., 15 Va. App. 17, 19 (1992).

Here, claimant stepped on the used fastener during work hours at 4:00 p.m. on August 30, 2016, as he followed up on vehicles receiving maintenance in the service bays of employer's premises. Farrish, who had supervised claimant for the year and a half he worked as a service manager, confirmed that claimant was reasonably expected to be in the service bays to fulfill his employment duties. Farrish testified that it was claimant's job to oversee the technicians and their work, and the technicians worked in the service bays. For all of these reasons, we find that claimant's injury occurred in the course of his employment.

The final element of a compensable injury, whether the injury arose out of claimant's employment, is also satisfied here because a condition of the workplace either caused or contributed to his injury. Under our standard of review, the contradictory evidence employer emphasizes is inconsequential when credible evidence supports the Commission's findings.

The Commission found the object responsible for the injury, a used fastener, "peculiar to the nature of [] claimant's employment." Credible evidence, including testimony from claimant and Dean that these particular fasteners were only used in automotive applications, supports this finding.

The Commission further found that claimant had not "walked over multiple non-work-related areas that could have been the source of the object," and credible evidence similarly supports this finding. It is undisputed that technicians used fasteners in the service bays of employer's premises. Acker's deposition testimony, which he acknowledged during the hearing, revealed that technicians would place the used fasteners on the floor after removing them from vehicles until they could later discard them. Acker confirmed in his deposition that this was "fairly common." Similarly, Farrish testified that technicians were not trained to stop what they were doing to pick up pieces of plastic on the floor, and the used fastener that claimant stepped on was made of plastic.

- 13 -

No evidence supports employer's argument that claimant encountered the used fastener in his own vehicle. Claimant testified that the only place he could have stepped on a used fastener would have been in the service bays because he did not work on vehicles himself. Based on how the witnesses described the use of fasteners, we would have to find that claimant had been removing panels from his own car that day to accept employer's argument, which would mean disregarding the Commission's finding that claimant credibly testified.

On the date of the injury, claimant credibly testified to driving "directly home" after work, and he confirmed that he did not walk over non-work areas where these used fasteners would have been lying around. Plank, claimant's wife, credibly testified that she had always cleaned their home and had seen no fasteners in or around their home.

Claimant testified that he had seen used fasteners "on the floor just about every day" in the service bays. Similarly, Dean emphasized in his testimony that used fasteners were "all over the place" because technicians would remove fasteners from vehicles and lay them on the floor.

The Commission considered all of this evidence in finding that claimant suffered a compensable injury, and the Commission did not err. Because these used fasteners created a hazardous condition in the workplace as claimant performed his duties—and this hazardous condition caused his injury—we find that claimant's injury arose out of his employment.

B. Compensable Consequence of Injury by Accident

Employer also contends that the Commission erred in finding claimant's IBD a compensable consequence of his injury by accident.

"The [C]ommission's determination regarding causation is a finding of fact," Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26 (2005), and "an award of the [C]ommission 'shall be conclusive and binding as to all questions of fact,'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 749-50 (2004) (quoting Code § 65.2-706(A)). We also "defer to the

- 14 -

[C]ommission's 'conclusions upon conflicting inferences, legitimately drawn from proven facts'—for inferences, like historic facts, are likewise 'equally binding on appeal.'" Id. at 750 (quoting Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101 (1983)). "Such deference is warranted 'even though there is evidence in the record to support a contrary finding.'" Id. (quoting S.P. Terry Co. v. Rubinos, 38 Va. App. 624, 632 (2002)).

The compensable consequences doctrine allows recovery for injuries resulting from the compensable primary injury even if those injuries do not manifest until some future date. Id. at 751. Under this doctrine, "all the medical consequences and *sequelae* that flow from the primary injury are compensable" if a direct causal link connects the primary compensable injury with the additional injury for which claimant seeks compensation. Id. at 750 (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.01, at 10-3 (2003)). Such a link exists when the compensable injury, "A," causes "C," the additional injury for which a claimant seeks compensation. See Farmington, 47 Va. App. at 24 ("Essentially . . . if 'A,' being the compensable injury, caused 'B,' and 'B' caused 'C,' then 'C' is not a compensable consequence. Only if 'A' caused 'C' can claimant recover."); compare Berglund, 43 Va. App. at 752-56 (finding sexual dysfunction, C, a compensable consequence of A, a compensable back injury, when evidence showed that C resulted from A), and Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 189 (1997) (finding hip degradation, C, a compensable consequence of A, a compensable back injury, when evidence showed that C resulted from treatment of A), with Farmington, 47 Va. App. at 24 (finding that when claimant's compensable back injury, A, caused symptoms of emotional and physical stress, B, which caused or aggravated claimant's GERD, C, it does not follow that the GERD was a compensable consequence when the evidence failed to directly link A to C).

Here, the Commission found that claimant's IBD was a compensable consequence of his occupational accident, and we are bound by that determination when credible evidence supports it. Other potential causative factors are inconsequential under our standard of review, and employer's reliance on Farmington is misplaced. Unlike the evidence in Farmington, there is credible evidence here that shows a causal link between the compensable injury—claimant's puncture wound—and the additional injury for which claimant sought compensation, his IBD.

Testifying as an expert in gastroenterology in his *de bene esse* deposition, Eisner traced the development of claimant's IBD to the foot injury by explaining that claimant developed an infection from stepping on the used fastener, which resulted in claimant's need for antibiotics and subsequent development of Crohn's colitis, a form of IBD. Notably, Eisner found a "close temporal association" between the time claimant stepped on the used fastener and the onset of his IBD symptoms, which occurred within a year of his foot injury and developed only after claimant's prolonged use of broad-spectrum antibiotics. Eisner therefore linked claimant's primary compensable injury, the puncture wound in his foot, to the compensable consequence, his IBD.

In disputing causation, employer emphasizes VonDerLinden's opinion; however, we agree with the Commission that VonDerLinden's opinion on causation is "not overly probative." In assigning less weight to VonDerLinden's opinion, the Commission recognized that she was a treating physician; however, her specialty, which was limited to podiatry, limited the probative value of her opinion on the causation of claimant's IBD. The questionnaire format that employer presented to VonDerLinden limited her opinion to a checkmark response, which further limited the probative value of this evidence. The Commission permissibly resolved the conflict between Eisner's medical opinion and the other opinion testimony by accepting Eisner's opinion as more persuasive.

Though employer also tries to minimize the causal link between claimant's foot injury and his development of IBD by claiming that a later MRSA infection created claimant's need for antibiotics—not his foot injury—claimant's medical records refute this. Claimant's infections and antibiotic use from his puncture wound began as early as September 2, 2016, within days of his August 30, 2016 injury. The medical records confirm that these infections—including the MRSA that later developed in January 2017—flowed from claimant's puncture wound, which failed to properly heal until months after the injury.

Because credible evidence supported a causal link between the puncture wound in claimant's foot and his IBD, we find that claimant's IBD is a compensable consequence of his primary compensable injury.

### III. CONCLUSION

For the foregoing reasons, we affirm the Commission's award of benefits.

<u>Affirmed.</u>