COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Athey and White


MARIA VELAZQUEZ

                                                    MEMORANDUM OPINION*
v.      Record No. 1270-22-2                              PER CURIAM
                                                    SEPTEMBER 19, 2023

DAN RIVER WINDOW CO., INC., ET AL.


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        (Horace F. Hunter; Hunter-Everage, PLLC, on brief), for appellant.

        (Esther King; McCandlish Holton, P.C., on brief), for appellees.


        Maria Velazquez (the claimant) appeals the decision of the Workers' Compensation

Commission finding that she failed to prove a compensable injury by accident.[1]  After examining

the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit," "the dispositive issue or issues have been

authoritatively decided," and the claimant "has not argued that the case law should be

overturned, extended, modified, or reversed."  See Code § 17.1-403(ii)(a)-(b); Rule 5A:27(a)-(b).

Accordingly, we affirm the Commission's decision.

---

* This opinion is not designated for publication.  See Code § 17.1-413(A).

[1] In addition to challenging the Commission's decision, the claimant argues that the
deputy commissioner erred in several ways by denying her claim for benefits.  Our appellate
jurisdiction does not extend to decisions made by deputy commissioners.  Rather, we are limited
to reviewing "final decision[s] of the Virginia Workers' Compensation Commission."  Code
§ 17.1-405(A)(2).  Therefore, we do not address the assignments of error challenging the deputy
commissioner's decision.

The claimant worked for Dan River Window Company constructing windows. She filed a claim for workers' compensation benefits alleging an injury resulting from a work-related accident on February 5, 2019.

In a proceeding before the deputy commissioner, the claimant testified that she was injured that day when she pulled materials from a box. She said that she "fe[lt] something pop" in her right elbow and her arm began to hurt. The claimant reported the incident to her supervisor, but she did not seek medical attention for two weeks. On February 19, 2019, she consulted Dr. Michael Kyles, an orthopedic physician. The notes made by Dr. Kyles about that visit reflect that the claimant reported that she "felt a sharp pain in [her] right elbow" while she was "pulling some material." His records contain no indication that she reported feeling her elbow "pop." The claimant received an MRI in July 2019. Based on the results of the MRI, Dr. Kyles diagnosed her with chronic lateral epicondylitis in her right elbow, also referred to as tennis elbow. In August 2019, Dr. Kyles performed surgery on the claimant's right elbow.

Despite the surgery and physical therapy, the claimant continued to report "a lot" of pain in her right elbow in December 2019. When the pain persisted through May 2020, Dr. Kyles noted that he "d[id] not understand" why it had not resolved and suggested a second surgical opinion. The claimant told Dr. Kyles that her surgery provided no pain relief and that "any repetitive . . . movement of [her] arm cause[d] severe pain." She said that she could not return to her job because it "require[d] frequent lifting." The claimant noted she had "no pain with nonuse."

---

[2] On appeal from a decision of the Commission, "the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below," in this case the employer. *See Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (en banc)).

During a deposition in August 2020, the claimant testified she could not lift "even three pounds." Less than a month later, however, surveillance footage showed her lifting her young child into and out of a car.

In early 2021, the claimant consulted Dr. Douglas Okay for a second opinion. Dr. Okay ordered another MRI, which provided no "conclusive" basis for her continued elbow pain. Dr. Okay recommended further physical therapy.

In May 2021, after last seeing the claimant a year earlier, Dr. Kyles evaluated her again. He noted Dr. Okay's recommendation for conservative treatment. The claimant told Dr. Kyles that she was "incapable" of lifting her three year old with her right arm and found it "difficult" to drive. Dr. Kyles had no opinion regarding further treatment.

In late 2021, the claimant sought treatment at the University of North Carolina (UNC). The UNC orthopedist diagnosed her with radial tunnel syndrome and recommended surgery.[3]

At the February 2022 hearing before the deputy commissioner, the claimant initially denied "any" elbow pain before her injury on February 5, 2019. However, on cross-examination, she conceded she had testified during her deposition that her elbow had hurt before that date. She insisted, however, that the prior pain was of a different type. The claimant admitted that Dr. Kyles told her that her tennis elbow injury probably resulted from "many years" of "overuse." Further, she agreed that at the time of her claimed injury, she was "pulling boxes," one of two "motions" she was required to engage in "every day," over and over. When confronted with Dr. Kyles's record stating the claimant told him in May 2021 that she could not lift her three-year-old child with her right arm, she denied making that statement.

---

[3] That physician's records contain conflicting information regarding whether his recommendation was for "cubital tunnel" or "radial tunnel" surgery. We adopt the term for the claimant's condition used by the Commission, "radial tunnel" syndrome, which is supported by the record and, in any event, is only tangentially related to the issue on appeal.

- 3 -

The deputy commissioner denied the claim for benefits. In doing so, she found that the claimant was "less than credible." The deputy commissioner stressed that, in addition to the surveillance footage impeaching her testimony, the claimant "often veered away" from providing direct answers to questions while testifying. She also found that, contrary to the claimant's testimony that she "felt a 'pop'" and sudden pain in her elbow on February 5, 2019, Dr. Kyles's records did not mention a "pop" in the claimant's description of her injury to him. Further, the deputy commissioner found that the claimant's medical records indicated that her injury resulted from repetitive motion, not from an injury by accident.

On review, the Commission unanimously agreed with the deputy commissioner that the claimant's testimony was not credible. It concluded that the surveillance footage "undermined" the claimant's credibility. But while the deputy commissioner cited the absence of a reference to a "pop" in Dr. Kyles's records, the Commission found that omission was "less significant than [Dr. Kyles's] statement relating the injury to [her] 'pulling material [and] fe[eling] pain [in her] right arm.'" It found that the claimant "understood from Dr. Kyles that her elbow injury probably resulted from years of overuse of the arm," but it did not address whether the injury resulted from repetitive motion. The Commission ultimately held that the claimant had failed to prove a compensable injury by accident and affirmed the deputy commissioner's denial of benefits.

ANALYSIS

On appeal, the claimant argues that the Commission erred by finding that she failed to prove an injury by accident as required to be entitled to benefits under the Workers' Compensation Act.

As the appellant in this case, the claimant bears the "burden of showing that reversible error was committed" by the Commission. *See Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012). This Court defers to the Commission in its role as fact finder, which requires us to

"construe the evidence in the light most favorable to the prevailing part[y] before [it]." *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019). In our analysis, the Commission's factual findings are "conclusive and binding" if supported by credible evidence. *See id.* This principle applies "even [if] there is evidence in the record to support a contrary finding." *City of Waynesboro v. Griffin*, 51 Va. App. 308, 317 (2008) (quoting *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 279 (1986)). An appellate court simply does not "retry the facts before the Commission" or "review the weight . . . of the evidence[] or the credibility of witnesses." *Jeffreys*, 297 Va. at 87 (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)).

An employee must prove her entitlement to workers' compensation benefits by a preponderance of the evidence. *Rush v. Univ. of Va. Health Sys.*, 64 Va. App. 550, 555-56 (2015). To prove entitlement based on a compensable "injury by accident" as that term is used in Code § 65.2-101, a claimant must establish "(1) an identifiable incident; (2) that occur[red] at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." *Riverside Reg'l Jail Auth. v. Dugger*, 68 Va. App. 32, 38 (2017) (quoting *Hoffman v. Carter*, 50 Va. App. 199, 212 (2007)). More specifically, that bodily change must be one that "produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." *Alexandria City Pub. Schs. v. Handel*, 299 Va. 191, 197 (2020) (quoting *Snead v. Harbaugh*, 241 Va. 524, 528 (1991)).

"The [C]ommission's determination of whether a claimant suffered 'an "injury by accident" presents a mixed question of law and fact, because it involves both factual findings and the application of law to those facts.'" *Dugger*, 68 Va. App. at 37 (quoting *Van Buren v. Augusta Cnty.*, 66 Va. App. 441, 446 (2016)). Although we are required to defer to the

- 5 -

Commission's factual findings, whether those findings "prove the claimant suffered an 'injury by accident' is a question of law" that the Court reviews de novo. *Goodyear Tire & Rubber Co. v. Harris*, 35 Va. App. 162, 168 (2001).

To constitute an "injury by accident," "the requisite causative event must be more than a simple reference to a 'work activity;' it must be a specific occurrence that can be temporally fixed with reasonable accuracy." *City of Charlottesville v. Sclafani*, 300 Va. 212, 221 (2021) (citing *Morris v. Morris*, 238 Va. 578, 589 (1989)). "Merely establishing that a claimant was engaged in work activity during the discrete time period in which the injury occurred is insufficient." *Id.* The "proper focus" should "not [be] on the specific time frame in which the accident occurred, but on the specific causative event that precipitated the accident because '[s]uch events are inevitably "bounded with rigid temporal precision."'" *Id.* at 221-22 (second alteration in original) (quoting *Morris*, 238 Va. at 589). A "gradually incurred injury," by contrast, "is not an injury by accident within the meaning of the Act." *Hoffman*, 50 Va. App. at 213 (quoting *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 175 (1996)). Therefore, "injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not 'injuries by accident.'" *Dugger*, 68 Va. App. at 38 (quoting *Morris*, 238 Va. at 589).

The claimant argues that the Commission erred by finding that the evidence was insufficient to prove an injury by accident because it failed to consider the undisputed evidence. She points to her testimony that "she felt a pop in her right elbow when she was pulling material from a box on a rack" and immediately reported to her supervisor that she had been injured. She further notes her report to Dr. Kyles, documented in his records, that she "experienced immediate pain in her right elbow while pulling material." The claimant contends that the evidence was not in conflict and that the Commission was required to "accept as true" her testimony and other evidence establishing a

compensable accident. Alternatively, the claimant contends that if the Commission rejected her testimony, it "essentially found that the injury was due to repetitive motion." She maintains that "[i]t is inconsistent to [conclude] that the [d]eputy [c]ommissioner's credibility findings were supported by the evidence without also [determining] that the injury was the result of repetitive motion." We disagree.

The Commission, in its role as the finder of fact, simply rejected as incredible the claimant's testimony that she experienced a physical incident that met the definition of an injury by accident. Although the *extent* of her disability was not dispositive of the injury-by-accident question, it was highly relevant to the Commission's assessment of her credibility. The claimant's statements in August 2020 and May 2021 regarding her claimed inability to lift more than three pounds with her right arm were directly impeached by surveillance footage showing her doing just that during the same time frame. With regard to the injury-by-accident issue and the claimant's testimony that she felt a "pop" on February 5, 2019, the claimant made conflicting statements on that point. Contrary to her 2022 testimony that she felt a "pop" on that date, Dr. Kyles's records do not reflect that the claimant provided such a description when she first sought medical care for her elbow only two weeks after the alleged incident in 2019. The Commission was entitled to give greater weight to the description of the alleged injury that she provided in her roughly contemporaneous report to Dr. Kyles in 2019 rather than in the testimony she provided three years later, particularly in light of the fact that her testimony on the extent-of-disability issue had been impeached. *See Jeffreys*, 297 Va. at 87 (requiring deference to the Commission's credibility and other factual findings).

Moreover, the claimant admitted that Dr. Kyles told her that her tennis elbow condition likely resulted from "many years" of "overuse." *See Dugger*, 68 Va. App. at 38 (holding that pain from "repetitive trauma . . . or other cumulative events" does not establish an injury by accident as required for benefits). When the claimant sought a second opinion regarding the source of her

- 7 -

elbow pain in early 2021, a second MRI provided no "conclusive" basis for that pain. The UNC physician who evaluated the claimant in late 2021 attributed her elbow pain to radial tunnel syndrome, and he did not associate it with a discrete injury.

Although the Commission did not specifically address whether the claimant's pain resulted from repetitive motion, it was not required to do so in order to conclude that she failed to meet her burden of proving she sustained an injury by accident. *See id.* (defining an injury by accident as requiring proof of an "obvious sudden mechanical or structural change" to a body part (quoting *Hoffman*, 50 Va. App. at 212)). Accordingly, the evidence supports the Commission's finding that her testimony that she experienced a discrete "pop" and sudden sharp pain on February 5, 2019, was not credible and that she therefore failed to sustain her burden of proving that she suffered an injury by accident on that date. *See Thompson v. Brenco, Inc.*, 38 Va. App. 617, 624 (2002) (affirming the Commission's ruling that the claimant failed to prove a causal link between his workplace accident and his subsequent cervical condition in the face of conflicting evidence).

CONCLUSION

On this record, we conclude that the evidence supports the Commission's decision that the claimant failed to prove that she suffered an injury by accident. Therefore, we affirm the denial of the claim for benefits.

*Affirmed.*

- 8 -